° (December 31, 1921.)

## S. E. McNEIL, Respondent, v. PANHANDLE LUMBER COMPANY and AETNA CASUALTY AND SURETY CO., Appellants.

[203 Pac. 1068.]

Workmen's Compensation Law — Construction — Industrial Acci-
dent Board—Hearings—Rules of Evidence—Findings of Fact
— Conclusiveness — Accident — Definition—Time—Total Dis-
ability — Previous Injury or Impaired Health — Appeal to
Supreme Court.

1. The workmen's compensation law of this state and all pro-
ceedings under it are to be liberally construed with a view to
effect the object of said law and to promote justice.

2. In reviewing hearings before the industrial accident board
upon the question as to whether the evidence submitted sustains
the findings of the board, the courts will consider the competency,
relevancy and materiality of the evidence according to the rules
applicable to trials in courts.

3. The findings of fact of the industrial accident board, when
supported by competent evidence, are conclusive on appeal to the
district court or to this court, the jurisdiction of said courts being
limited to a review of questions of law.

4. The word "accident" is used in the workmen's compensa-
tion law of this state in the "popular and ordinary sense of the
word as denoting an unlooked-for mishap or an untoward event
which is not expected or designed."

5. In case of claims under the workmen's compensation law
if the accident is one whose happening cannot be fixed as of a
specific date, it is sufficient to establish such time with reasonable
probability.

Publisher's Note.

3. On conclusiveness of findings as to what constitutes an "acci-
dent" or "personal injury," see note in L. R. A. 1918F, 877.

4. On the question as to what is an "accident" or "personal injury"
within the meaning of workmen's compensation acts, see notes in
L. R. A. 1916A, 29, 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867.

What constitutes loss of eyesight under the act, see note in Ann.
Cas. 1918A, 533.

6. "Total disability" as used in the workmen's compensation law of this state takes no account of a state of partial disability or impaired health existing in the claimant previous to the happening of the accident claimed to have caused such "total disability."

7. Appeal lies to this court from a judgment of a district court affirming or reversing an award of compensation by the industrial accident board.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

From judgment of district court affirming award of industrial accident board defendant appeals. Motion to dismiss appeal *denied*. Judgment *affirmed*.

H. M. Morey and Post, Russell & Higgins, for Appellants.

Under the constitutional provisions and the general statute relating to appeals to the supreme court and the Industrial Insurance Act itself, the appellants are entitled to an appeal. (Sec. 9, art. 5, Const.; *Maple v. Williams*, 15 Ida. 642, 98 Pac. 848.)

"The word 'accident' as used in a Compensation Act requiring the injury compensated for to be by 'accident,' is held to be employed in its ordinary sense as meaning an unlooked for and untoward event which is not expected or designed." (Corpus Juris, Workmen's Compensation, pp. 64, 68; 1 Honnold on Workmen's Compensation, p. 274, 280; *Liondale Bleach, Dye & Paint Works v. Riker*, 85 N. J. L. 426, 89 Atl. 929; *Prouse v. Industrial Commission of Colorado*, 69 Colo. 382, 194 Pac. 625; *Pimental's Case*, 235 Mass. 598, 127 N. E. 424; *Lane v. Horn etc. Baking Co.*, 261 Pa. St. 329, 104 Atl. 615, 13 A. L. R. 963; *McCauley v. Imperial Woolen Co.*, 261 Pa. St. 312, 104 Atl. 617; *Phil Hollenbach Co. v. Hollenbach*, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; *Stombaugh v. Peerless Wire Fence Co.*, 198 Mich. 445, 164 N. W. 537; *Bucyrus Co. v. Townsend*,

Publisher's Note.

6. On total disability as contemplated by workmen's compensation acts, see notes in **Ann. Cas.** 1915B, 1000; **Ann. Cas.** 1917E, 240.

65 Ind. App. 687, 117 N. E. 656; *In re Sanderson's Case,* 224 Mass. 558, 113 N. E. 355; *Steel v. Cammell, Laird & Co.* (Eng.), 2 K. B. Div. [1905] 232; Adshead's Elliott on Workmen's Compensation, 6th ed., pp. 3–5 et seq.; *Cooke v. Holland Furnace Co.,* 200 Mich. 192, 166 N. W. 1013; *Adams v. Acme White Lead etc. Works,* 182 Mich. 157, Ann. Cas. 1916D, 689, 148 N. W. 485, L. R. A. 1916A, 283; *De Witt v. Jacoby Bros.,* 1 Cal. Ind. Acc. Com. Dec. (No. 11, 1914) 4, cited in 6 N. C. C. A. 488, note.)

The loss of an eye by a one-eyed man does not constitute a permanent total disability. (Sec. 6234, I. C. S.; *Winn v. Adjustable Table Co.,* 193 Mich. 127, 159 N. W. 372, 163 N. W. 906; *Weaver v. Maxwell Motor Co.,* 186 Mich. 588, Ann. Cas. 1917E, 238, 152 N. W. 993, L. R. A. 1916B, 1276; 8 A. L. R., note, p. 1325.)

Potts & Wernette, for Respondent.

The only logical and reasonable construction that can be placed upon all the statutes taken together is that it must have been intended by the legislature, when an injury causes total incapacity and permanent disability to an employee, that the total disability statute should apply. (*In re Madden,* 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; *In re Branconnier,* 223 Mass. 273, 111 N. E. 792.)

"Where, by reason of a previously impaired physical condition of the employee, an accident results in a total incapacity, an award of compensation for total incapacity is permitted under some of the authorities, although a normal employee would have been only partially incapacitated." (Corpus Juris, Workmen's Compensation Acts, p. 94; *Schwab v. Emporium Forestry Co.,* 167 App. Div. 614, 153 N. Y. Supp. 234.)

The provisions of this act have been very liberally construed, in order to give the law the effect and the protection which it intended. (*Pettit v. Mendenhall,* 2 Cal. Ind. Acc. Com. Dec. 238; *Smith v. Munger Laundry Co.,* 1 Cal. Ind. Acc. Com. Dec. 168; *Dalton v. Employers' Liability*

*Assurance Corp., Ltd.*, cited in 12 N. C. C. A. 327, note; *Santa v. Industrial Acc. Com.*, 175 Cal. 235, 165 Pac. 689; *Schroetke v. Jackson-Church Co.*, 193 Mich. 616, 160 N. W. 383; *Hartford Accident & Indemnity Co. v. Industrial Acc. Com.*, 32 Cal. App. 481, 163 Pac. 225; *Fleming v. Robert Gair Co.*, 176 App. Div. 23, 162 N. Y. Supp. 298; *Turvey v. Brintons, Ltd.* (Eng.), 1 K. B. [1904] 328; *Shell Co. of California v. Industrial Acc. Com.*, 36 Cal. App. 463, 172 Pac. 611; *Fidelity & Casualty Co. of New York v. Industrial Acc. Com.*, 177 Cal. 614, 171 Pac. 429, L. R. A. 1918F, 856.)

DUNN, J.—In January, 1920, respondent was in the employ of appellant Panhandle Lumber Company, hereinafter called the Lumber Company, and was engaged in building rollways and handling saw-logs. He worked alone, and the undisputed testimony as shown by the record is that the labor he performed involved a considerable amount of heavy lifting. He claims to have lost the sight of his right eye by detachment of the retina as a result of this labor and to have been totally disabled thereby, the sight of his left eye having been lost through an accident some eight years before. He applied to respondent, the insurer of the Lumber Company, the Aetna Casualty and Surety Company, hereinafter called the Surety Company, for compensation on account of said injury, but said Surety Company denied liability. Thereafter respondent demanded of the industrial accident board a hearing before a committee of arbitration, which was granted, and the arbitration committee found according to respondent's contention, awarding him $12 per week for a period of thirteen weeks and three days, that being the period of temporary total incapacity for work, and $12 per week for a period of 400 weeks.

Appellants thereupon made application to the industrial accident board, hereinafter called the board, for a review of the decision of the committee of arbitration, which was granted. By stipulation of the attorneys for appellants and respondent the testimony taken before the arbitration

committee was admitted and considered by the board the same as if the witnesses were personally present and testifying before said board, and in addition thereto certain oral and written testimony was introduced on behalf of appellants. The board made findings of fact and rulings of law and awarded respondent the sum of $12 per week for fifteen weeks and three days, the period of temporary total incapacity for work, and $12 per week for a period of 384 weeks and four days for the reason that the injury sustained by respondent had caused total disability; and further awarded him $6 per week during the remainder of his life, said allowance of $6 per week to begin after the expiration of said period of 384 weeks and four days. The board further found that there was then due respondent the sum of $816, the amount of compensation that had accrued from the first day of February, 1920, to the date of said decision. The award made by said board required further that after the payment of said sum of $816 the remainder of said award should be paid to respondent in monthly payments commencing thirty days from the date of said decision.

Appeal was taken from the decision of the board to the district court of Kootenai county and said court on reviewing said decision made findings of fact sustaining the decision of the board in every particular and entered its decree affirming *in toto* the award made by said board.

Appeal was taken from the judgment of the district court, which respondent now moves to dismiss on the ground that the law of this state makes no provision for such appeal, and on the further ground that this court has no jurisdiction to consider such appeal.

Section 9, art. 5, of the state constitution provides: "The supreme court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof."

C. S., sec. 7149, provides that "A judgment or order, in a civil action, except when expressly made final, may be reviewed as prescribed in this code, and not otherwise."

C. S., sec. 7151, provides: "Any party aggrieved may appeal in the cases prescribed in this code."

Section 6270A of the workmen's compensation law, Session Acts 1921, page 479, referring to the action to be taken by the district court on deciding a matter appealed to said court from the board, provides that "The record in any case shall be transmitted to the board within 20 days after the order or judgment of the court unless appeal has been taken from such order or judgment."

Section 6272A of the workmen's compensation law, Session Acts 1921, page 480, provides that "Whenever any question involving compensation of an injured employee or his dependents, is appealed to the district court or supreme court by the employer and the appellate court finds in favor of the employee in an amount equal to or greater than the award of the board, then the employer shall pay," etc.

Section 6271 of the workmen's compensation law as amended, Session Acts 1921, pages 479 and 480, provides for filing in the proper district court of the state a certified copy of a decision of the industrial accident board awarding compensation from which no appeal has been taken and for the rendering of a decree or judgment of said court in accordance therewith and providing that such decree or judgment shall have the same effect as though it had been rendered in a suit duly heard and determined by said court, except that there shall be no appeal therefrom.

Nowhere does the law make final such a judgment of the district court as is under consideration in this case. The language in the sections of the workmen's compensation law quoted and referred to above clearly imply a legislative intent that judgments of the district courts in such cases as this shall be appealable. While the law does not expressly limit the time within which such appeal shall be taken, we think a fair and reasonable construction of the language of section 6270A, *supra*, justifies the conclusion that it was the intention of the legislature that such appeals should be taken within twenty days after the order or judgment appealed from, and before the return of the record to the

industrial accident board. The motion to dismiss the appeal is denied.

Appellants filed what they termed a demurrer to the first notice of injury and preliminary application for compensation and also to the findings of fact of the arbitration committee and to the findings of fact of the board on the ground that the facts stated in the notice and application for compensation and the findings of the arbitration committee and board are not sufficient to constitute a compensable claim under the workmen's compensation law. They also filed a motion for an order of the district court setting aside, vacating, and holding for naught the award of the committee of arbitration and of the board on the ground, in substance, that the evidence submitted by the claimant is insufficient to sustain the findings of the arbitration committee or the board, or the award made by them to respondent. Attorneys for the respondent objected to the hearing of said demurrer and motion for the reason that there is no authority under the laws of this state for filing such demurrer or motion. The court held that the filing of the demurrer and motion was without authority and that this was improper practice under the law of this state, and therefore overruled said demurrer and denied the said motion. The court suggested, however, that the better practice on appeal to the district court in such cases as this would be for appellant to set out, either in the notice of appeal or in some other formal manner, the errors of law upon which the appeal is based. That not having been done in this case, the district court considered all the questions raised either in the demurrer or motion before making the rulings above noted.

Appellants assign on their appeal to this court the following errors:

1. The court erred in overruling appellants' demurrer.

2. The court erred in denying appellants' motion to set aside the findings of fact, conclusions of law and award of the industrial accident board.

3. There is no evidence to sustain the judgment of the trial court to the effect that there was an "accident" sustained by plaintiff while working for the Panhandle Lumber Company.

4. The evidence is insufficient to sustain the amount of the judgment in that there is no evidence to show that claimant would, under any conditions, be entitled to compensation at the rate of $12 per week under the terms of the workmen's compensation law of the state of Idaho.

5. The court erred in granting judgment for a specific indemnity based on a permanent total disability.

6. There is no evidence to sustain the judgment of the trial court to the effect that there was a personal injury by accident arising out of and in the course of the employment of McNeil by defendant Panhandle Lumber Company.

7. The court erred in granting judgment in favor of respondent and against appellants.

The court did not err in overruling appellants' demurrer or in denying their motion to set aside the findings of fact, conclusions of law and the award of the board, and we approve its suggestions as to the proper procedure in cases of this kind in bringing to the attention of the district court the errors of law relied on.

As we understand the position taken by appellants with regard to the finding that respondent suffered personal injury by accident arising out of and in the course of his employment by the Lumber Company, their contention is that the evidence is insufficient to show that the injury of which respondent complains was brought about as a result of heavy lifting done by respondent while he was in the employ of appellant Lumber Company, and also that if the injury complained of was the result of an accident occurring in the manner claimed by respondent still the evidence is insufficient by reason of the fact that respondent has not been able to fix with sufficient certainty the time of the alleged accident.

Webster's New International Dictionary defines the word "accident" as follows: "An event that takes place without one's foresight or expectation; an undesigned, sudden, unexpected event; an undesigned and unforeseen occurrence of an afflictive or unfortunate character."

The New Standard Dictionary gives the following definition: "Anything that happens; anything occurring unexpectedly, or without known or assignable cause."

"The word 'accident' as used in the Compensation act requiring the injury compensated for to be by 'accident' is held to be employed in its ordinary sense as meaning an unlooked for and untoward event which is not expected or designed." (Corpus Juris, Workmen's Compensation Acts, p. 64.)

In the case of *Fenton v. Thorley,* L. R. App. Cas. [1903], 443, it is said "that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed."

C. S., sec. 6417, provides: "If a workman receives personal injury by accident arising out of and in the course of any employment covered by this chapter his employer or the surety shall pay compensation in the amount and to the person or persons hereinafter specified."

Section 1 of the Workmen's Compensation Act of England, passed in 1897, which our compensation law closely follows as to this provision, declares that "if in any employment to which this act applies personal injury by accident arising out of and in the course of the employment is caused to a workman," his employer shall be liable to pay compensation.

The evidence taken before the arbitration committee and the board is conflicting as to the cause of respondent's injury, but it is ample to sustain the findings of the board on that point as follows:

"That said claimant commenced working for the said Panhandle Lumber Company on or about the fifteenth day of January, 1920, and remained in their employ as such

laborer until, to wit: the first day of February, 1920; that the work of said claimant while in the employ of said defendant, Panhandle Lumber Company, consisted of building rollways, he, the said claimant, being required to lift logs out of a trough-shaped skidway, in which the logs were skidded, to the rollway, and then roll such logs over the embankment on to the rollway; that the logs that he was required to handle alone, averaged from fifty to five hundred feet, board measure, and many of said logs were extremely heavy, and required extraordinary lifting; that often times when the said logs were taken out of the skidways and rolled over the embankment on to the rollway, they would roll crosswise, and said claimant was required to straighten out the logs on said rollway, which at times required extraordinary lifting, and which caused unusual and extraordinary strain on the body of said claimant; that on one day a short time prior to the date that said claimant left the employ of said defendant company, he was required and did lift an unusually and extraordinary heavy log, which was designated by said claimant as the 'blue butt,' which said last mentioned log was considerably heavier and harder to handle than the other logs handled by said claimant.

"That on or about the twentieth day of January, 1920, by reason of the heavy lifting on one of the said logs required by said claimant, the said claimant suffered a detachment of the retina of the right eye, as a result of the strain from said heavy lifting; that by reason of said detachment of the retina of the right eye, the said claimant lost the entire sight of his said right eye, and which said loss of sight to his said right eye is permanent; that the claimant having previously lost the sight of his left eye, he, the said claimant, is now totally blind.

"The board expressly finds that the said claimant lost the total sight of his said right eye, caused by detachment of the retina, due to heavy lifting of one of said logs above mentioned, on or about the twentieth day of January, 1920, and not from any other cause whatsoever, and the

said board further finds that at the time the said claimant went into the employ of said Panhandle Lumber Company, the eyesight of said claimant in his right eye was good, and his said right eye was in a sound and healthy condition; that the loss of the sight of said right eye was caused by said accidental injury as above set forth, which did arise out of and in the course of the employment of said claimant.''

The well-settled rule that forbids this court to reverse a trial court in cases in which the evidence is conflicting but sufficient to sustain a decision applies to the findings of fact made by the industrial accident board in cases of this kind, and is applicable likewise to the district court in reviewing the decisions of said board, the jurisdiction of said courts in such cases being. limited to a review of questions of law.

The cause of the injury is not required to be proved with absolute certainty. It is sufficient if the respondent proves, to the satisfaction of the board, with reasonable probability that the accident occurred in the manner claimed by him while he was performing labor as an employee of the Lumber Company and fixes approximately the date of the accident. The evidence submitted by respondent is clear and satisfactory to the effect that the kind of labor respondent was engaged in, namely, heavy lifting, while he was in the employ of the lumber company is one of the well known causes of detachment of the retina. Dr. Hopkins testified that he reached the conclusion that the detachment of the retina in this case was caused by the strain from the heavy lifting that McNeil had recently performed by taking up in succession the various causes known for detachment of the retina and eliminating them one by one as he found them incapable of explaining the injury in this case, finally having left only the one cause, namely, heavy lifting, which could reasonably furnish such explanation. The physicians who testified in behalf of respondent did not pretend to have actual knowledge of the cause of respondent's injury,

but upon the examination of respondent and obtaining a history of the case from him, they gave it as their deliberate judgment that the heavy lifting done by him in the course of his employment by the lumber company was the cause of the detachment of the retina of his right eye. They also testified that in such an accident as this the detachment might come on suddenly, but that it usually came on slowly. On this point Dr. Hopkins, a witness for respondent and the first specialist to examine respondent after the accident, testified as follows on cross-examination:

"Q. Now, Doctor, you say that you think that detachment of the retina may be brought about from heavy lifting and strain caused by heavy lifting?

"A. Yes.

"Q. Now, would that come on suddenly or gradually?

"A. Well, in the majority of cases that I have seen personally they have come on gradually. However, they can come on quickly, but in the majority of cases they come on slowly.

"Q. Isn't there some manifestation of something wrong with the vision of the eye almost immediately after the alleged strain?

"A. No, they don't usually tell you that. It is seldom that they say that; they will say that a day or two afterwards they began to notice a black speck in their field of vision, and then this keeps getting a little greater, till they say, 'I see a cloud about here,' in some particular field of their vision, and in the majority of these cases where we see them early and where we can look in and see immediately why the most of these cases I find the detachment has started in the up and outer field of vision, and then in the matter of a couple of weeks this begins to come down and touches the retina all the way down, until we find the greater portion of the detachment below instead of up high.

"Q. This case that came under your observation, was that one where the detachment or evidence of detachment came on suddenly?

"A. No, he didn't notice it for a couple of days afterwards: two or three days, something like that.

"Q. When you say coming on gradually, you mean days or weeks or what?

"A. Well, it might take a week or two weeks or longer for this to show itself sufficient to bother their vision. They could look straight ahead, unless this detachment is right in the central field. If it is out in the field of vision, they might have it there for a considerable length of time without being conscious of it. . . . . .

"Q. Sometimes these things come on without any cause that you can denominate?

"A. Absolutely.

"Q. In the case of Mr. McNeil, Doctor, as I understand, you went over the whole field of causes of detached retina, and began to eliminate from them?

"A. Yes; that is the only way we can do, and the only possible reason that we could find for this detachment was some strain that he had in the past; that was the only thing that we could see."

As against this no witness testifying on behalf of appellants went further than to say that it was possible the injury might have occurred without any known cause. Some of the physicians testifying on behalf of appellants claimed that they had never known a case of detachment of the retina to be produced by the strain from heavy lifting, but other physicians testifying for appellants admitted this to be one of the known causes of detachment. The physicians testifying on behalf of respondent admitted the possibility of detachment from some unknown cause, but certainly it is not reasonable to reject a known probable cause for the injury and ascribe it to an unknown possible cause.

The respondent testified as follows:

"Q. Now, how long prior to the time that you went to Dr. Hopkins, and how long after you quit work, or when was it that you first noticed that there was something wrong with your right eye?

"A. Well, I noticed it a little in the bunk-house, but I blamed the glasses for that.

"Q. The bunk-house where?

"A. At Spirit Lake.

"Q. Before you went home?

"A. Yes, sir. Then I noticed it, of course, right after I got home, that my eye was failing me; it was like a black cloud settling down over me; and then of course I went to Dr. Hopkins just as quick as I could get some money."

The conclusion reached by the industrial accident board, a part of whom heard all the testimony in the case, is fully sustained by evidence. It reviewing hearings before the industrial accident board upon the question as to whether the evidence submitted sustains the findings of the board, the courts will consider the competency, relevancy and materiality of the evidence according to the rules applicable to trials in courts.

Undoubtedly in most cases of accidental injury the claimant would be able to fix not only the day but the hour, if necessary, when the accident occurred. But in a case of this kind in which the injury may not appear for some time after it has been actually inflicted by the accident it would be manifestly unfair and a denial of justice to refuse compensation because the claimant could not identify the very day of the accident, though he could fix the time with reasonable certainty. To so hold would be to misconstrue the humane provisions of this law, whose purpose is declared by the legislature to be to provide sure relief for injured workmen and their families and dependents. (C. S., sec. 6214.) The workmen's compensation law, like other laws of this state, is to be liberally construed with a view to effect its object and promote justice. (C. S., sec. 9444; *Fidelity & Casualty Co. of N. Y. v. Industrial Acc. Com.,* 177 Cal. 614, 171 Pac. 429, 430, L. R. A. 1918F, 856.) This does not mean that the courts should endeavor by construction to extend its provisions to persons not intended

to be included by it, but that it shall be so construed as to carry out its purposes and, so far as is reasonably possible, secure its benefits to all those who were intended to receive them.

While some courts have insisted upon too great exactness as to the time of receiving an injury and upon too narrow limits in defining the term "accident," other courts of equal ability and standing have adopted the rule indicated in this decision. As illustrating the very narrow limits fixed for the meaning of the word "accident," we cite *Stombaugh v. Peerless Wire Fence Co. et al.*, 198 Mich. 445, 164 N. W. 537, a Michigan case, in which the industrial accident board found one Edwin Stombaugh "received an accidental injury, namely, rupture of the right auricle of the heart, arising out of and in the course of his employment, which produced death. That the work he was doing for respondents on the day and at the time of death was, to Mr. Stombaugh, heavy and hard work. That he was not used to this heavy work and exertion. That the work he was doing for respondents at the time of death, and prior thereto, required him to strain, lift, pull, and lower heavy rolls of wire weighing 150 to 160 pounds, from their place in the tier in the car, and at the time of death, about chest high, to the floor, and then roll them to the car door, a distance of about five feet, and into the chute. That this straining, lifting, pulling, and handling these heavy rolls of wire weighing 150 to 160 pounds on the average together with the weakened and thinned condition of the wall of the heart, we are convinced, caused the wall to part and the rupture of the right auricle of Mr. Stombaugh's heart and his death."

In reviewing the finding of the industrial accident board, the supreme court of Michigan used this language:

"All the foregoing, taken from the opinion of the board, is sustained by some evidence, excepting only the conclusion that there was an accidental injury, which conclusion is wholly unsupported by evidence. The man died while doing the work he agreed to do, in the way he intended to do it.

The exercise accounts for his death, and if he had been informed about the condition of his heart, he must have known that death was likely to result, at any time, from any considerable physical exercise. There is no evidence of mischance or miscalculation in what was being done, none of anything fortuitous or unexpected in the manner of doing it. There is undisputed evidence that he had a chronic trouble—disease—of the heart, of long standing, the wall of one auricle being so thin that 'any exertion at all might have been the cause of its breaking.' Death was merely hastened by the exertion.''

It seems to us that so narrow a construction of the term ''accident'' would largely defeat the purpose of the workmen's compensation law of this state and deprive many persons of the assistance to which they are entitled and which this law was intended to give them. It fails to take account of the conditions that led to the enactment of laws of this kind. Compensation laws were rendered necessary by the fact that the beneficiaries of such legislation are not people of independent means who can refuse to labor, even though such labor involves possible consequences such as befell Stombaugh in the Michigan case. There are many instances in which persons unfit for physical exertion willingly choose to take the chance involved in honorable, though hazardous, labor in preference to leaving their dependents to shift for themselves, and the compensation law is aimed for their relief in case of accident as well as for the physically sound and fit who may be accidentally injured. Much more in harmony with the purpose of such laws is the holding in the English case of *Fenton v. Thorley, supra,* in which appellant ruptured himself by overexertion in trying to turn a wheel. In the course of the opinion Lord Macnaghten said:

''Fenton was a man of ordinary health and strength. There is no evidence of any slip, or wrench, or sudden jerk. It may be taken that the injury occurred while the man was engaged in his ordinary work, and in doing or trying to do the very thing which he meant to accomplish. . . . .

"If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him.

"One other remark I should like to make. It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their employer's expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the Act some injuries ordinarily described as 'accidents' which beyond all others merit favourable consideration in the interest of workmen and employers alike. A man injures himself by doing some stupid thing, and it is called an accident, and he gets the benefit of the insurance. It may even be his own fault, and yet compensation is not to be disallowed unless the injury is attributable to 'serious and wilful misconduct' on his part. A man injures himself suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the Act because he exerted himself deliberately, and there was an entire lack of the fortuitous element! I cannot think that that is right. I do think that if such were held to be the true construction of the act, the result would not be for the good of the men, nor for the good of the employers either, in the long run. Certainly it would not conduce to honesty or thoroughness in work. It would lead men to shirk and hang back, and try to shift a burthen which might possibly prove too heavy for them on to the shoulders of their comrades."

This is in accord with the construction that should be placed upon the workmen's compensation law of this state.

As bearing upon the question of the time of the accident and tending to support our view, though not directly passed

upon, attention ·is called to *Fidelity & Casualty Co. of New York et al. v. Industrial Acc. Com. of California et al., supra,* in which the supreme court of California upheld an award of compensation to one De Witt, a showcard sign writer, who had used wood alcohol in connection with his work for one and one-half years prior to the seventh day of January, 1914. Immediately before the holidays preceding this date he had used the alcohol in much greater quantities than formerly and directly after the holidays had used an extraordinary quantity of it in cleaning the apparatus with which he worked and in washing and cleaning his hands. The injury to his eyes which the commission held to be due to an accident began to manifest itself on the seventh, and had so progressed that by the 13th of January he could not use his eyes, the board fixing the time of the accident as on or about the seventh day of January, 1914. (See, also, *Pettit v. Mendenhall,* 2 Cal. Ind. Acc. Com. Dec. 238; *Smith v. Munger Laundry Co.,* 1 Cal. Ind. Acc. Com. Dec. 168; *Hartford Acc. & Indem. Co. v. Industrial Acc. Com. et al.,* 32 Cal. App. 481, 163 Pac. 225; *Fleming v. Robert Gair Co.,* 176 App. Div. 23, 162 N. Y. Supp. 298.)

We have discussed at some length the evidence introduced before the board in order to show that the findings complained of in assignments 3 and 6 are amply supported by evidence, and are not based upon "guess, surmise or speculation." Being supported by evidence, such findings are binding upon the district court and this court, thus disposing of said assignments adversely to the contention of appellants.

Appellants urge that the evidence is insufficient to sustain the award of $12 per week to respondent. This is sufficiently answered by the fact that all the evidence in the record bearing upon the wages earned by respondent prior to his injury is that the lumber company was paying him at the rate of sixty cents per hour, or $28.80 per week. This is sufficient to support the award made by the board.

It is also urged by appellant that the court erred in

granting judgment for a specific indemnity based on permanent total disability.

At the time McNeil entered the service of the lumber company he had been without the use of his left eye for about eight years. Appellants contend that for this reason he was at that time partially disabled and that the loss of the other eye while he was the employee of the lumber company does not entitle him to an allowance based upon total disability by reason of the loss of the right eye. As a simple problem in mathematics such a result might possibly be reached, but it is a result which cannot be sustained in actual practice nor in justice to the respondent. The record shows that at the time of his service to the lumber company he was able to render and did render the service of an able-bodied man, and the evidence tends to show that he was performing labor which usually required the services of two men. The lumber company accepted his services in the condition in which he was and paid him wages presumably based upon his ability at that time. The loss of his right eye certainly placed him in a condition of total disability, entitling him clearly to the award made by the board. In a case involving an employee who had previously lost one eye and who met with an injury depriving him of the other, the supreme judicial court of Massachusetts, in passing upon this very question, said:

"The employee, when he entered the service of the subscriber, had that degree of capacity which enabled him to do the work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man in the possession of all his faculties. But, nevertheless, it was the employee's capacity. It enabled him to earn the wages which he received. He became an 'employee' under the act and thereby entitled to all the benefits conferred upon those coming within that description. The act affords a fixed compensation for a limited time 'while the incapacity for the work resulting from the injury is total.' It establishes no other standard.

It fixes no method for dividing the effect of the injury and attributing a part of it to the employment and another part to some pre-existing condition, and it gives no indication that the legislature intended any such division. The total capacity of this employee was not so great as it would have been if he had had two sound eyes. His total capacity was thus only a part of that of the normal man. But that capacity, which was all he had, had been transformed into a total incapacity by reason of the injury. That result has come to him entirely through the injury." (*In re Branconnier, In re Travelers' Ins. Co.*, 223 Mass. 273, 111 N. E. 792.)

In *Madden's Case*, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000, the industrial accident board found that, while engaged in the performance of the work for which she was hired, Honora E. Madden "received a personal injury arising out of . . . . her employment, . . . . aggravating and accelerating a weak heart condition to the point of total incapacity for work." The board allowed her compensation based upon total disability. In discussing the argument of the insurer against such allowance the same Massachusetts court said: "It has been urged with force on behalf of the insurer that since the harm to the employee was not wholly the effect of the work but came in large part from the previous weakened condition of the employee's heart, hence, either there can be no award of compensation, or it should be restricted to that part of the injury which results directly from the work, and the part of the injury which flowed from the previous condition should be excluded. Even though the premise be sound, the conclusion does not follow. The act makes no provision for any such analysis or apportionment. It protects the 'employee.' That word is defined in part 5, sec. 2, as including 'every person in the service of another under any contract of hire' with exceptions not here pertinent. There is nothing said about the protection being confined to the healthy employee. The previous condition of health is of no consequence in determining the amount of relief to be afforded."

It is equally true that in our compensation law there is nothing that limits the provisions to "workmen" who were previously in sound condition or perfect health. C. S., sec. 6217, *supra,* applies to every "workman" who "receives personal injury by accident arising out of and in the course of any employment" covered by the compensation law, and C. S., sec. 6321 provides that " 'Workman' is used as synonymous with 'employee' and means any person who has entered into the employ of, or works under contract of service or apprenticeship with an employer."

Following substantially the conclusion of the court in Madden's case, it may truly be said that our compensation law makes no distinction between wise and foolish, skilled and unskilled, healthy and unhealthy employees. All who are rightly described as "workmen" or "employees" come within the act.

The judgment of the district court is affirmed, with costs to respondent.

Rice, C. J., Budge and McCarthy, JJ., and McNaughton, District Judge, concur.