(August 10, 1923.)

## A. L. TAYLOR, Respondent, v. BLACKWELL LUMBER COMPANY, a Corporation, V. A. FINROW and THE ASSOCIATED EMPLOYERS' RECIPROCAL, Appellants.

[218 Pac. 356.]

WORKMEN'S COMPENSATION LAW — HEARINGS — DEPOSITIONS — IM-PEACHING TESTIMONY—APPEALS FROM INDUSTRIAL ACCIDENT BOARD TO DISTRICT COURT—SPECIFICATIONS OF ERROR—INDEPENDENT CON-TRACTOR—CONFLICTING EVIDENCE.

1. A hearing before a member of the industrial accident board on a claim filed under the workmen's compensation law should be full and complete, and the board should not permit a second hearing except on a very strong showing.

2. Depositions of character witnesses, taken many months after the testimony sought to be impeached had been given, were properly rejected.

3. One who appeals from an award of the industrial accident board to the district court should specify the errors, committed by the board, upon which he relies.

4. It is the duty of the industrial accident board to determine the ultimate fact whether the claimant is an employee or an independent contractor, and when there is a conflict in the evidence this court will not disturb the findings of the board, provided there is substantial evidence to sustain them.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. W. F. McNaughton, Judge.

Judgment affirming award of industrial accident board in favor of claimant, from which defendants appeal. *Judgment affirmed.*

Ezra R. Whitla and R. S. Nelson, for Appellants.

Persons logging at so much per thousand have almost uniformly been held to be independent contractors. (*Young v. Fosburg Lumber Co.*, 147 N. C. 26, 60 S. E. 654, 16 L. R. A., N. S., 255; *Gay v. Roanoke Lumber Co.*, 148 N. C. 336, 62

S. E. 36; *Abbott v. Sumpter Lumber Co.*, 93 S. C. 131, 76 S. E. 146; *Easter v. Hall*, 12 Wash. 160, 40 Pac. 728; *Carter v. Berlin Mills*, 58 N. H. 52, 42 Am. Rep. 572; *Kieldsen v. Wilson*, 27 Neb. 158, 42 N. W. 1054; *Sparks v. Cresson Lumber Co.*, 40 Tex. Civ. 222, 89 S. W. 423; *Jackson v. Downes* (Tex. Civ.), 149 S. W. 286.)

The right to terminate the contract does not control. (*Gall v. Detroit Journal Co.*, 191 Mich. 405, 158 N. W. 36; *Dayton v. Free*, 46 Utah, 277, 148 Pac. 408; *Scales v. First State Bank*, 88 Or. 490, 172 Pac. 499.)

The fact that the logs had to be measured so that the number of feet could be determined, or that Finrow might have any general supervision of the work, is immaterial. (*Donlon Bros. v. Industrial Acc. Com.*, 173 Cal. 250, 159 Pac. 715; *Buckingham v. Commary-Peterson Co.*, 39 Cal. App. 154, 178 Pac. 318; *Bacon v. Candler*, 181 Mich. 372, 148 N. W. 194; *Burns v. Michigan Paint Co.*, 152 Mich. 613, 116 N. W. 182, 16 L. R. A., N. S., 816; *Barton v. Studebaker*, 46 Cal. App. 706, 189 Pac. 1025.)

Furnishing the tools has no bearing on the question. (*Stricker v. Industrial Acc. Com.*, 55 Utah, 603, 188 Pac. 849.)

There is no evidence to show the claimant was an employee. All the evidence shows him to be an independent contractor. (*Houghton v. Loma Prieta Lumber Co.*, 152 Cal. 574, 93 Pac. 377.)

This court in reviewing the evidence will consider only that evidence which is competent, relevant and material under the rules applicable to trial courts. (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068.)

James F. Ailshie and James F. Ailshie, Jr., for Respondent.

On appeal from an award of the industrial accident board to the district court, the appellant must make formal specification or assignment of errors, and when such is not done there is nothing properly before this court on appeal from

the district court.   (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068.)

A specification of error which goes to the sufficiency of the evidence, but which does not point out wherein or in what particular the evidence is insufficient, will not be considered. (*State v. Maguire,* 31 Ida. 24, 169 Pac. 175; *Citizens' Right of Way Co. v. Ayers,* 32 Ida. 206, 179 Pac. 954; *Weber v. Pend d'Oreille Mining Co.,* 35 Ida. 1, 203 Pac. 891; *Hawkins v. Smith,* 35 Ida. 349, 205 Pac. 188; *State v. Sims,* 35 Ida. 505, 206 Pac. 1045.)

On appeal under the workmen's compensation law the jurisdiction of the district and supreme courts is limited to a review of questions of law, and the findings of the industrial accident board will not be set aside if there is any evidence to support them.   (C. S., sec. 6270; *McNeil v. Panhandle Lumber Co., supra; Swift & Co. v. Industrial Com.,* 287 Ill. 564, 122 N. E. 796; 2 Schneider, Workmen's Compensation Law, p. 1524; *Industrial Com. v. Big Six Coal Co.* (Colo.), 211 Pac. 361; *Associated Employers' Reciprocal v. State Industrial Com.* (Colo.), 211 Pac. 491; *Industrial Com. v. Irvine* (Colo.), 212 Pac. 829; *Staley-Patrick Drilling Co. v. State Industrial Com.,* 88 Okl. 260, 212 Pac. 1006; *Haskell & Barker Car Co. v. Brown,* 67 Ind. App. 178, 117 N. E. 555, 18 N. C. C. A. 232; *Walker's Case* (Mass.), 137 N. E. 171; *Donnelly's Case* (Mass.), 137 N. E. 696; *Chicago, M. & St. P. Ry. Co. v. Chinne* (Ind.), 137 N. E. 855.)

The doctrine of independent contractor is peculiar to the law of negligence and has no proper place in or application to the workmen's compensation law.   (C. S., sec. 6321; 2 Schneider, Workmen's Compensation Law, sec. 533, p. 1439; *McDowell v. Duer* (Ind. App.), 133 N. E. 839.)

Where no affirmative reason is given as to why certain rulings complained of are erroneous, the court will not consider such alleged error.   (*State v. Mushrow,* 32 Ida. 562, 185 Pac. 1075.)

A question not raised upon the trial cannot be urged on appeal.   (3 C. J., sec. 636, p. 742; *Darby v. Heagerty,* 2 Ida. 282, 13 Pac. 85; 3 C. J., sec. 730, p. 808; *Simoneau v.*

*Pacific Electric Co.*, 166 Cal. 264, 136 Pac. 544, 49 L. R. A.,
N. S., 737; *Shields v. Hanbury,* 128 U. S. 584, 9 Sup. Ct.
176, 32 L. ed. 565; *Hurt v. Monumental Mercury Mining
Co.*, 35 Ida. 295, 206 Pac. 184.)

The power of an employer to terminate the employment
at any time is incompatible with the full control of the work
which is enjoyed by an independent contractor, and hence
no single fact is more conclusive of the relation of master
and servant than the unrestricted right of the employer to
terminate the employment at will. (14 R. C. L., p. 72,
sec. 9; *Cockran v. Rice,* 26 S. D. 393, Ann. Cas. 1913B, 570,
128 N. W. 583; *Helmuth v. Industrial Acc. Com.,* 59 Cal.
App. 160, 210 Pac. 428; *Muncie Foundry & Machine Co. v.
Thompson,* 70 Ind. App. 157, 123 N. E. 196; *Press Pub. Co.
v. Industrial Acc. Com.* (Cal.), 210 Pac. 820; *Bodwell v.
Webster,* 98 Neb. 664, Ann. Cas. 1918C, 624, 154 N. E. 229;
*Arizona-Hercules Copper Co. v. Crenshaw,* 21 Ariz. 15, 184
Pac. 996; *Kelley's Dependents v. Hoosac Lumber Co.,* 95 Vt.
50, 113 Atl. 818, 20 N. C. C. A. 902; *Bristol & Gale Co. v.
Industrial Com.,* 292 Ill. 16, 126 N. E. 599; 1 Thompson
on Negligence, sec. 579; *Williams v. National Cash Register
Co.,* 157 Ky. 836, 164 S. W. 112; *Columbia School Supply
Co. v. Lewis,* 65 Ind. 339, 116 N. E. 1; *Tuttle v. Embury-
Martin Lumber Co.,* 192 Mich. 385, Ann. Cas. 1918C, 664,
158 N. W. 875.)

It is the right on the part of the employer to control the
method of conducting the work, and not his actual interfer-
ence, which makes the difference between an independent
contractor and a servant or agent. (14 R. C. L., sec. 3,
p. 68; *Carter Coal Co. v. Howard,* 169 Ky. 87, 183 S. W.
244; *Amalgamated Roofing Co. v. Travelers Ins. Co.* (Ind.),
133 N. E. 259.)

Compensation laws should be liberally construed in favor
of the injured workman. (*McDowell v. Duer, supra; Mc-
Neil v. Panhandle Lumber Co., supra.*)

WM. E. LEE, J.—On April 7, 1921, while engaged in
skidding certain logs belonging to the Blackwell Lumber

Company, in Kootenai county, for V. A. Finrow, who had a logging contract with that company, A. L. Taylor, a man fifty-four years of age, was struck and knocked down by a log and caught beneath other logs which rolled on him, resulting in a fracture of the pelvis and other serious injuries to and about his right hip. At the time of the injury he was being assisted by his little daughter, thirteen years of age. After waiting until help could be summoned from a distance of three or four miles, the logs were taken away and the injured man was carried to his home, where he was practically helpless until about September, 1921, and he had not fully recovered in June, 1922.

In December, 1921, Mr. Taylor filed a claim for compensation, under the workmen's compensation law, against the Blackwell Lumber Company and V. A. Finrow, and a hearing was held before a member of the industrial accident board on February 8, 1922, at Coeur d'Alene. The defendants attempted to demur to the claim for compensation, but the demurrer was not entertained by the commissioner. The defendants thereupon dictated into the record an answer in which it was denied that claimant was an employee of the defendants, or either of them, and it was alleged that he was an independent contractor. At that time the claimant, Mrs. Mamie Taylor, his wife, Mrs. Naomi Becker, an employee of the Coeur d'Alene Grain & Milling Company, Fred LaFrenz, who helped roll the logs off claimant when he was injured, Dr. D. D. Drennan, the physician who attended claimant in his injuries, Carl Lundgren, an employee of the Blackwell Lumber Company, and V. A. Finrow testified for and in opposition to the claim, and certain documentary evidence was admitted. Thereafter, Commissioner Duffy, of the industrial accident board, dismissed the proceeding against the Blackwell Lumber Company and made findings of fact and rulings of law in favor of claimant and against V. A. Finrow. An award was thereupon entered on March 31, 1922, in favor of claimant and against V. A. Finrow and the Associated Employers' Reciprocal, his surety, in the sum of approximately $1,600.

On April 26, 1922, Finrow and his surety filed a notice
of appeal and application for a rehearing of the case be-
fore the industrial accident board. The record does not
show what action the board took on this application other
than to set the case for a rehearing at Boise on a date which
was later changed to July 7, 1922. Thereafter, Finrow and
his surety gave notice that they would take the depositions
of Finrow, who testified at the first hearing, and whose testi-
mony had been transcribed and was a part of the record in
the case, Thomas F. Taylor, C. H. Nash, who was present
at the first hearing and was not called to testify, Dr. John
C. Dwyer and Dr. Alexander Barclay, at Coeur d'Alene, on
June 26, 1922, and, in pursuance of said notice, the deposi-
tions of these witnesses were taken at great length. There-
after, claimant served and filed a notice to take the deposi-
tions of Dr. Drennan, who had testified at the first hearing,
and whose testimony had been transcribed and was a part of
the record in the case, and Theodore Fischbach, at Coeur
d'Alene, on July 3, 1922, and, in pursuance of said notice,
the depositions of these witnesses were taken at great length.
Thereafter, Finrow and his surety served and filed a notice
to take the depositions of Mrs. Eva Gordon, George K. Evans
and Mrs. Amanda Cox, at Coeur d'Alene, on July 5, 1922,
and, in pursuance thereof, the depositions of these witnesses
were taken at great length. The three witnesses last named
were all character witnesses. Then, on July 7, 1922, at Boise,
at the rehearing before the three members of the industrial
accident board, the testimony of Dr. James L. Stewart was
taken on behalf of Finrow and his surety.

On August 23, 1922, the industrial accident board made
findings of fact, rulings of law and an award in favor of
claimant and against Finrow and his surety. This award
was identical with the award theretofore made by Commis-
sioner Duffy. Finrow and his surety thereafter and on
September 19, 1922, served and filed a notice of appeal from
the board to the district court of the eighth judicial district,
in and for Kootenai county, "from the whole of said award
and each and every part thereof." Thereafter and on Janu-

ary 5, 1923, almost two years after the injury occurred, the district court, reciting the fact that "no assignments or specifications of error" had been filed in the appeal to that court, adopted and affirmed the findings of fact and rulings of law and award of the board, and entered judgment in favor of the claimant in the amount that the board found he was entitled to recover. The judgment also directed that the several amounts found due bear interest. On January 24, 1923, Finrow and his surety served and filed their notice of appeal from the judgment of the district court to this court.

C. S., sec. 6263, provides that "if the compensation is not settled by agreement, the board may, upon its own motion, or upon application by either party, assign the case for hearing by a member of the board." In the case at bar, the first hearing was held before a member of the board who, after hearing the evidence, made findings of fact and rulings of law and an award; and, as provided by C. S., sec. 6265, a copy of this award was sent to each of the parties.

The law provides that unless a claim for review is filed by either party within thirty days, the decision shall be enforceable under the provisions of C. S., sec. 6271. C. S., sec. 6268, provides that if a claim for review is filed, "the board shall hear the parties and *may* hear the evidence in regard to any or all matters pertinent thereto, and *may* revise the decision of the member in whole or in part, or *may* refer the matter back to the member for further findings of fact, and shall file its decision with the records of the proceedings and notify the parties thereof. Neither party shall, as a matter of right, be entitled to a second hearing upon any question of fact." Upon the filing of a claim for a review, therefore, the board must hear the parties upon their claim or application for a review of the hearing, but the law makes it optional with the board to either "hear the evidence in regard to any or all matters pertinent thereto" and "revise the decision of the member in whole or in part or refer the matter back to the member for further findings of fact." It necessarily follows that the board can also,

after it has heard the parties upon their claim or application for a review of the hearing, ratify the findings, rulings and award of the member who first heard the case, and can decline to hear any more evidence. And after it has thus ratified the findings, rulings and award of the member and notified the parties, its decision is final, in so far as the award is concerned, as to a review under C. S., sec. 6268.

The transcript in this case comprises more than 400 typewritten pages, yet there were only two disputed questions for the industrial accident board to determine. The principal question was whether Taylor was an employee or workman. The second was the extent of his injuries, and this depended largely upon the testimony of physicians.

The claimant and Finrow, at the hearing before Commissioner Duffy, testified fully with regard to the character of the relations existing between them, and the extent of claimant's injuries was testified to by Dr. Drennan. Dr. Barclay, Dr. Dwyer and the other witnesses who later testified by depositions were residents of Kootenai County and should have been called at the time of the original hearing. The legislature of this state, when it passed the workmen's compensation law, recited as one of the reasons therefor that "the remedy of the workman has been uncertain, slow and inadequate"; and the legislature, recognizing that "the welfare of the state depends upon its industries, and even more upon the welfare of its wageworkers," in order to provide a more adequate system by which workers might recover compensation for injuries occasioned in the course of their employment, passed this law. In the interest of an expeditious administration of the workmen's compensation law, the hearing before the commissioner should have been full and complete, and it would seem that the industrial accident board should not permit a second hearing, such as was done in this case, except on a very strong showing.

On July 5, 1922, the testimony of Mrs. Eva Gordon, George K. Evans and Mrs. Amanda Cox was taken by deposition. These witnesses all testified that claimant's reputation was bad. The board refused to file or consider these

depositions, and this action on the part of the board is complained of by appellants. Whatever may have been the ground for refusing to file and consider these depositions, the action of the board was proper. It requires no argument to establish the injustice of permitting such evidence many months after the testimony sought to be impeached had been given.

C. S., sec. 6270, provides that "an award of the board in the absence of fraud, shall be final and conclusive between the parties . . . . unless within thirty days after a copy has been sent to the parties, either party appeals to the district court. On such appeal the jurisdiction of said court shall be limited to a review of questions of law." In view of the plain provisions of the statute, it would seem that one who appeals from an award of the industrial accident board to the district court should specify the errors committed by the industrial accident board upon which he relies. This court, in *McNeil v. Panhandle Lumber Co. et al.*, 34 Ida. 773, 203 Pac. 1068, expressly stated that it approved of a suggestion made by the district court as to the proper procedure in bringing to the attention of the district court the errors of law relied on:

"The court suggested, however, that the better practice on appeal to the district court in such cases as this would be for appellant to set out, either in the notice of appeal or in some other formal manner, the errors of law upon which the appeal is based."

Had the district court in the case at bar refused to consider the appeal from the industrial accident board because of the failure of appellants to specify the errors claimed, its action therein would not have been error.

Appellants contend that the facts do not support the findings of the board and of the district court that claimant was in the employ of Finrow at the time of the accident, but that the evidence shows that claimant was an independent contractor and therefore not entitled to the benefits of the workmen's compensation law. This is the principal question involved in the determination of this appeal.

C. S., sec. 6321, defines a workman as "any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer. . . . ."

It is stated in 14 R. C. L. 67:

"The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. . . . . In this connection, the ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control."

The supreme court of California, in *Green v. Soule,* 145 Cal. 96, 78 Pac. 337, defined the term "independent contractor" as follows:

"An independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. . . . . The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for."

"In determining whether the relation is that of master and servant or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment; whether payment was to be made by the day, week, month, etc., with a reservation of the power to discharge, or whether there was to be a payment by the piece or by the entire job. But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employee." (*Williams v. National Cash Register Co.,* 157 Ky. 836, 845, 164 S. W. 112, 115, 116.)

"The fact that Kelley was paid by the thousand is an important feature indicating that he was an independent contractor—though, as all agree, it is not conclusive." (Citing

cases.) "On the other hand, the fact that the defendant could, at any time, and without liability, stop the work and terminate the relation is an important feature indicating that Kelley was, under the law, an employee." (Citing cases.) "The fact that Kelley and Beers were required to get in all the logs cut by them indicates an independent employment. But the fact that they were not obliged to cut a definite quantity, or over a definite area, or for a definite time" (citing cases), "and the fact that the defendant was to furnish the tools" (citing cases), "indicate an arrangement for service only." (*Kelley's Dependents v. Hoosac Lumber Co. et al.*, 95 Vt. 50, 113 Atl. 818.)

See, also, *Bristol & Gale Co. v. Industrial Com. et al.*, 292 Ill. 16, 126 N. E. 599.

"The right of discharge is one of the strong indications that the relation was one of employment. An independent contractor must be permitted to finish his contract in the absence of breach on his part. That the deceased was paid by commission is not a determining test, but, as a rule, it is quite immaterial how the payment is made, whether in wages, salary, or commission, or by the piece or job. . . . ." (*Aisenberg v. C. F. Adams Co., Inc., et al.*, 95 Conn. 419, 111 Atl. 591.)

Claimant testified that he had been employed by Finrow for some time in different logging work; that immediately prior to the time this particular work was commenced, he had been employed by Finrow and had received $10 per day for the services of himself and his team; that Finrow wanted these particular logs moved a short distance and decked so that they could be loaded on trucks and hauled to the lake; and that, for the work of moving the logs, he was to be paid $2.50 per thousand feet for himself and his team. He testified also that Finrow furnished the mud dray used in skidding the logs, one of the two teams, part of the harness, chains, a loading line, a block, a pair of tongs and four canthooks. Taylor testified that Finrow procured the feed for both teams while he was engaged in this work; that he was "supposed to work eight hours a day"; and that Finrow

told him to build a road to a point where he could reach the logs, and was to pay him for building the road. In answer to a question propounded upon cross-examination, Mr. Taylor said:

"He [Finrow] had about two hundred thousand, I believe, up there, and he asked me if I wanted to put them down, and I told him, I said, 'I don't believe I can make anything at that.' 'Well,' he says, 'it is better than laying around,' he says, 'go at it, put down what you can and there will be wages in it anyway.' That is all the contract, or all the talk about that I bring out, there was not anything really to do, so I went to work. His camp was shut down there at that time and I had the horses up there and I thought I might as well be working, so I went to work."

As to the question of supervision of the work, claimant testified as follows:

"Q. Did anyone supervise or inspect the work that you did in skidding? . . . . A. Vic—Vic Finrow. He came up and told me that he wanted them decked up to where he wanted them decked up, told me to deck them up close as I could so he wanted to load them with the jammer, and he had me cut out a piece of road to where it would be convenient for him to get out with the trucks, told me how he wanted it done and those kind of things."

As to whether or not claimant agreed to skid the entire 200,000 feet of logs, he testified as follows:

"A. Why, I was not able to do anything as far as that is concerned, and I was not in the first place, to finish anything. I was to put down what logs I wanted to or what I could, that is all the contract there was about it, but I was to put down some of the logs—I was to put down as many of the logs as I wanted to, that there was not no certain amount fixed for me to put down or nothing like that.

"Q. Mr. Taylor, as you understood the arrangements, could you quit any time you wanted to? A. Oh, of course I could.

"Q. Would you object, would you have felt that you had any right to object if Mr. Finrow had discharged you at any

time? A. Not in the least; I could not see why I would have; he did not bind me to anything to put any certain amount in.''

At the first hearing, Commissioner Duffy propounded the following question to the claimant:

"Q. Mr. Taylor, on this logging work that you were doing at the time of your accident—skidding, I believe you call it —you state that you figure you were earning ten dollars a day. How did you estimate that you were earning ten dollars a day? Did you figure to haul so many thousand feet in a day at $2.50 a thousand that would make you ten dollars a day? A. As near as I could I did, the way we talked it, you know, he said to go ahead and do what I could and there would be wages in it anyway. I thought if I did not put down enough by the thousand to make it, why I would try to make a day's work, don't you see, that is the way I understood it, that I would not go up there and set down on him when he was not prepared, that I would try and do a day's work.''

As to the quantity of logs to be skidded, Mr. Finrow, testifying on behalf of the defendants, said:

"A. Why all of them, or whatever he could do of them.''

As to day's wages, Mr. Finrow testified:

"Q. Did you ever make an arrangement with Taylor to pay him if he did not make a day's wages out of it, that is, so as to insure his getting day's wages? A. I don't remember in regard to it.''

In the second examination of Mr. Finrow some months later he changed his testimony somewhat, stating positively that nothing was said about Taylor's making a day's wages out of the work he was doing at the time he was injured.

Finrow testified as to his understanding of his right to discharge Taylor as follows:

"Q. He [Taylor] could quit any time he wanted to? A. He could quit provided he could not make wages, I expect.

"Q. You could have let him go any time if you wanted to? A. Why, I guess so, I never had nobody tied to me.''

It is apparent that there was substantial evidence to the effect that Taylor was in the employ of Finrow when he was injured. It was fairly well established by the testimony of both Taylor and Finrow that Taylor was under no contractual obligation to skid the entire quantity of logs, but only as many as he desired; that Finrow retained the right, under the contract, to exercise a degree of supervision over the work; that Taylor could have quit at any time he desired, and that Finrow could have discharged him at any time before the work was finished; that Finrow furnished all the appliances for moving and decking the logs, and one team and harness, as well as the feed for both teams; that Finrow directed the manner in which the work was to be performed; and that Taylor was to receive $2.50 per thousand feet and at least $10 per day.

It must not be understood that we consider the evidence conclusive. There was considerable testimony tending to show that Taylor was not a workman but an independent contractor. There is but little, although some, evidence that claimant was to be paid a daily wage of $10. The method of payment is not a controlling circumstance in determining the relation. From our common knowledge, we know that in many lines of endeavor men and women are paid according to the amount of work they do instead of so much per day, and it will not be contended that they are independent contractors. Many employees are paid according to the number of miles they travel, railway workers, for instance, and they are under the absolute control of their employers in performing their duties. It is the actual relation between the parties that must control, and not the conclusion resulting from the single fact, if it be a fact, that Taylor was to be paid according to the number of feet of logs moved. (*Easton v. Industrial Acc. Com. et al.*, 34 Cal. App. 321, 167 Pac. 288; *Brown v. Industrial Acc. Com.*, 174 Cal. 457, 163 Pac. 664; *Komula et al. v. General Accident, Fire & Life Assur. Corp.*, 165 Wis. 520, 162 N. W. 919; *Muncie Foundry & Machine Co. v. Thompson*, 70 Ind. App. 157, 123 N. E. 196; *Helmuth et al. v. Industrial Acc. Com.*, 59 Cal. App.

160, 210 Pac. 428; *Cockran v. Rice*, 26 S. D. 393, Ann. Cas. 1913B, 570, 128 N. W. 583; *Fancher v. Boston Excelsior Co. et al.*, 235 N. Y. 272, 139 N. E. 265.)

Whether one is in the employ of another or is an independent contractor is to be determined from all the facts and circumstances established by the evidence. The evidence in the case at bar was conflicting, and reasonable minds might draw different conclusions therefrom. However, it was the duty of the industrial accident board to determine the ultimate fact, whether Taylor was an employee or an independent contractor, and, in view of the conflict of evidence and the fact that there is substantial evidence to sustain the findings of the board, this court will not disturb them. (*McNeil v. Panhandle Lumber Co. et al,*, 34 Ida. 773, 203 Pac. 1068; *Zeitlow v. Smock*, 65 Ind. App. 643, 117 N. E. 665; *Wausau Lumber Co. v. Industrial Commission et al.*, 166 Wis. 204, 164 N. W. 836; *Gorter v. Industrial Acc. Com. et al.*, 35 Cal. App. 88, 169 Pac. 262; *McDowell et al. v. Duer* (Ind. App.), 133 N. E. 839; *Western Indemnity Co. v. Pillsbury et al.*, 172 Cal. 807, 159 Pac. 721; annotation on Workmen's Compensation Acts, L. R. A. 1916A, 23.)

In view of our conclusion that there is substantial evidence to sustain the board in its determination that claimant was a workman in the employ of Finrow at the time of his injury, it becomes unnecessary to separately discuss the other assignments relied upon. As to the amount of the award, it is not disputed that claimant was seriously injured and that his injuries were such that he could not work for a long time. As to the duration of his disability, there is a conflict in the evidence. However, there is sufficient evidence to sustain the award of the board.

The judgment of the district court is affirmed. Respondent will recover his costs.

McCarthy and Dunn, JJ., concur.