(No. 6608.   December 15, 1938.)

ANNIE HIEBERT, Widow and Natural Guardian of MALINDA HIEBERT, WALTER HIEBERT, FRANCES HIEBERT and EVELYN HIEBERT, Dependent Minor Children, Respondent, v. HERBERT S. HOWELL and NORTHWEST INDEMNITY EXCHANGE, Appellants.

[85 Pac. (2d) 699.]

Ralph S. Nelson and Spencer Nelson, for Appellants.

Karl Paine, Wm. B. McFarland and Harry M. Morey, for Respondent.

AILSHIE, J.—Appellant Howell had been continuously engaged in the business of buying standing timber in Shoshone county, near Cataldo in Kootenai county and at other places, and of selling logs and contracting the logging out to logging contractors. Henry, David and Gus Hiebert and Frank Fast, a partnership, owned real and personal property including logging trucks, trailers, caterpillars and all equipment for skidding and hauling logs. David and Gus handled the trucks and Henry operated the caterpillar; Fast worked on a jammer.

During the early summer of 1937 the brothers had been working for wages for Lartz Brothers in Bonner county. In July of that year Gus and Henry, with two others, visited Howell's camp at Cataldo, seeking better employment. Howell offered them a job hauling logs, and the boys started to work on the Edson contract, Howell having "absolute supervision over them" from July 15th to September 1st. Checks were made out to the partnership and each man shared equally in the total earnings. September first Dave and Gus went to work for James Paullus, a subcontractor of Howell, and Paullus was their boss after that time, although Howell carried insurance for the men and "paid them direct."

In the afternoon of September 10th Gus was coming up the hill with his truck. Finding a truck parked ahead of him he walked around the curve of the road and saw his brother David's body lying face down in the tracks of the road. The wheels of the latter's truck had passed over his head and back, the truck had then gone "down the road about fifty yards . . . . and hit a tree and stopped there and the logs shot over the cab and the whole thing was lying there." The road was a narrow one about wide enough for a truck to go on; one side was a high steep bank and the other was quite

a drop down the hill. The conclusion was that David "was either thrown out of the truck or jumped out and hit the bank and the rear wheels passed over his head and shoulders and the body above the hips."

October 22, 1937, claim for compensation was filed by the widow of deceased for herself and her four minor children. Application for hearing before the Industrial Accident Board was filed February 5th following. Average wages for the deceased were claimed to be $36 a week for the year prior to September 10, 1937; funeral expense in excess of $200. The board awarded $200 for burial expenses incurred and compensation of $12 a week until claimant's death or remarriage, but not to exceed a period of 400 weeks from and after September 10, 1937, from which award, defendant employer and surety appeal.

Appellants' first and chief assignment of error is directed against the finding of the Board that David H. Hiebert was an employee of Paullus and not an independent contractor. It is contended that the three Hiebert Brothers and Fast were partners doing business as "Hiebert Bros."; and that the partnership *as such* became an independent contractor to do the work on which the Hieberts were employed. The fact that the Hieberts and Fast were, as between themselves, partners, which satisfactorily appears, did not prevent or interfere with them individually or collectively taking employment to haul and skid the timber for Paullus or Howell or anyone else and becoming ordinary employees as distinguished from independent contractor. As said by the Supreme Court of Minnesota in *Angell v. White Eagle Oil etc. Co.*, 169 Minn. 183, 210 N. W. 1004: "We see no reason for holding that the members of a copartnership cannot be employees of one who hires them to perform services for him."

The proofs in this case disclose some of the elements of a contract between Paullus and David and Gus Hiebert tending to constitute the latter as independent contractors but fall short in some important particulars of proving them to be independent contractors, viz.: Paullus could have discharged the Hieberts at any time and they could have quit at any time without breaking their contract. They had to go

to work at a definite hour in the morning. Paullus could "change them backwards and forwards on different jobs, according to how the loading worked out and the logs we were getting." Hieberts did not have a contract to haul any specified amount of logs. Dave and Gus worked subject to orders from either Howell or Paullus and their operation as to *time, place* and *manner* of loading and delivery were directed by one or the other. Except for the fact that they furnished their own trucks and hauling equipment and boarded themselves, and used the bunks in Howell's bunkhouse, they were the same as any other ordinary employee. The jammer was furnished and operated by or under the direction of either Paullus or Howell. The circumstance that the checks in payment for the work were made in favor of Hiebert Bros. in no way changed the relation of the employee for whose services the checks were given from employee to that of independent contractor. The nature and circumstances of the employment quite definitely fix the relation as that of employer and employee rather than that of employer and independent contractor. (*Hansen v. Rainbow Min. etc. Co.*, 52 Ida. 543, 17 Pac. (2d) 335; *In re Black* (*Black v. Isaak*), 58 Ida. 803, 80 Pac. (2d) 24; *E. T. Chapin Co. v. Scott*, 44 Ida. 566, 260 Pac. 172; *Taylor v. Blackwell Lumber Co.*, 37 Ida. 707, 218 Pac. 356; *Burchett v. Department of Labor & Industries*, 146 Wash. 85, 261 Pac. 802, 803, 263 Pac. 746.)

██ It is further urged that the claimant is not entitled to any award because of her failure to serve notice on Paullus and make the claim against him as well as against Howell. This contention is without merit. The proceeding here was brought under sec. 43–1611, I. C. A., which provides as follows:

"An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 43–1601 in any case where such employer would have been liable for compensation· if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same

injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident. This section shall be in force as to all contracts made subsequent to March 15, 1921.''

This statute came under consideration in *In re Fisk*, 40 Ida. 304, 232 Pac. 569, and the court said:

''In truth we see no conflict between the two sections. According to our interpretation C. S., sec. 6320 [sec. 43–1806, I. C. A.] makes the proprietor of the business liable for injury to an employee of an independent contractor who is engaged in work connected with the business of the proprietor. The new section 6287A [43–1611] makes both proprietor and contractor liable *and then provides that the proprietor, if he pays, may recover from the contractor.''* (Italics supplied.)

The foregoing view was reaffirmed in *E. T. Chapin Co. v. Scott*, 44 Ida. 566, 260 Pac. 172, the court saying:

''Respondent urges that the doctrine of an independent contractor has no application under the Workmen's Compensation Act, relying on *In re Fisk*, 40 Ida. 304, 232 Pac. 569. That case, however, recognizes that there may be independent contractors merely holding in line with C. S., sec. 6320, that the proprietor of a business is liable for an injury to an employee of an independent contractor who is engaged in work connected with the business of the proprietor, and that under C. S., sec. 6287A, *both the proprietor and the independent contractor may be liable.* . . . . In other words: The Fisk case deals with the rights of an employee of an independent contractor to recover from the proprietor.'' (Italics supplied.)

The same view was expressed in *Modlin v. Twin Falls Canal Co.*, 49 Ida. 199, 204, 286 Pac. 612. The court there said:

''The intent of the legislature to make responsible the employment in which the workmen, no matter how he comes, is injured is altogether patent. Under this statute, the Clear Lakes Syndicate together with its surety would have been pinned to liability forthwith had not the succeeding Session

of 1921 modified it by the following amendment; sec. 43–1611, *supra,* quoted above.

"While holding the employer liable, *this language gives him such a recourse against the contractor as makes the latter in effect primarily responsible. He had just as well pay first as last.* Whether or not claimant's employer, the Canal Company, was operating *ultra vires* is immaterial. (Italics supplied.) The fact remains that claimant was working, and working for the Canal Company. He was doing what his immediate employer directed him to do; and therefore covered by appellant's contract of insurance. (C. S., sec. 6278. Sec. 43–1601, I. C. A.)

"Appellant contends that its policy covered only such employees as were to be engaged in the company's regular business. The terms of the policy provided that it should 'cover the entire liability of the employer to his employees covered by the contract.' What employees were covered by the contract? Obviously, those mentioned in C. S., sec. 6278, *supra,* which imposes upon employers the duty to secure compensation to 'their employees,' without any reservation as to any particular class or type of employee."

It was the evident intent of the legislature to require the original employer, contractor and subcontractor to pay compensation to workmen injured on the job, whether they are employed by the original owner, employer, contractor or by a subcontractor. The fact that the liability extends to both the original contractor and subcontractor, so far as the employee is concerned, and gives to the employer the right to recover any amount paid by him from the contractor or subcontractor, does not prevent or interfere with the employee making his claim and asserting it directly against either or all together. If for any reason the employer desires to have the subcontractor brought in or bound by any order or judgment that may be entered against the employer, it is his duty to have such subcontractor made a party to the proceeding. As to whether such action is necessary, we express no opinion. This view was indicated by the late Chief Justice William A. Lee in *Hauter v. Coeur d'Alene etc. Min. Co.,* 39 Ida. 621, 228

Pac. 259. (To the same effect, see *Modlin v. Twin Falls Canal Co., supra.*)

It is further contended by appellants that an action or proceeding cannot be maintained for compensation for nonresident minors until such time as a guardian is appointed, in conformity with secs. 15–1845 to 15–1848; and in support of this contention, appellants cite and rely on *In re Bones,* 48 Ida. 85, 280 Pac. 223. That was a case of controversy between two nonresident guardians for minor children who were each seeking an order for payment of the compensation previously awarded to the widow (since deceased) and her minor children. In passing upon the question, this court, among other things, said:

"The right to compensation and payment involved in this case arises solely by virtue of the Workmen's Compensation Law of this state. Bones and Golden attempted to represent the wards, solely as guardians by virtue of their appointment as such by a court of a sister state. Not having power to act concerning the wards' property outside the state of Montana, their agreements concerning compensation to be awarded their wards in Idaho were invalid, each having failed to take out letters in this state, or to comply with the statutes governing foreign guardians of non-resident wards having property in this state. The approval by the Board of their agreements with the surety could not make them valid. (See *London Guaranty & Accident Co. v. Sterling,* [233 Mass. 485, 124 N. E. 286], *supra; In re Levangie,* 228 Mass. 213, 117 N. E. 200.)"

It will be seen that the Bones case does not cover the question here presented. Here, while both the mother and the children are nonresidents, the mother has appeared in person and prosecuted her claim for compensation both for herself and her minor children. The statute (subd. 2 of sec. 43–1101, I. C. A.) provides *inter alia* that:

"Such compensation to the widow or widower shall be for the use and benefit of such widow or widower and of the dependent children and the board may from time to time apportion such compensation between them in such way as it deems best. If a child has a guardian other than the surviv-

ing widow or widower, the compensation payable on account of such child shall be paid to such guardian.''

Sec. 43–1103 prescribes the length of time during which compensation must be paid and the times and contingencies upon which payments cease. As to minors, the payments stop on the minor marrying, reaching the age of 18 or prior death. As to the widow, the payments cease upon her ''death or remarriage, but in no case to exceed 400 weeks.'' So as to the mother, her right to a share in the award of compensation automatically ceases upon her remarriage or death. Whereas, the happening of either contingency does not affect or impair the right of the minors to receive compensation for the full period prescribed by the statute.

In other words, the minor children always have an interest in the award such as will at any time give them a legal standing before the board and the courts to protect their interest in the compensation. For instance, if an award were made to the mother and it should later appear that she is dissipating the fund and not using any of it for the support or benefit of the minors and is neglecting them, they would have an undoubted right to petition the board for an order directing their share of the compensation to be paid to a guardian for their use and benefit. So, also, if the mother should neglect to make application for compensation or even allow the statute of limitations to run against her claim, the minors would still have a right to petition for an award. (See *Allen v. St. Louis, S. F. Ry. Co.*, (Mo. App.) 81 S. W. (2d) 447.) In the case just cited the court said:

''While it is true that the surviving dependent widow or widower is primarily entitled to claim the benefit as one entitled to the exclusive payment thereof, if claim therefor be made by her or him, yet the minor children likewise have the right, as total dependents, to assert their claim—even though it may be of a contingent nature—as being entitled to such benefit upon the happening of the contingency therefor. *Bomar v. J. A. Kreis & Sons*, (Mo. App.) 72 S. W. (2d) 205.''

On the other hand, it has been held under similar statutes to ours that, where claim has been asserted by the mother on behalf of herself and minor children, and an award has been

made, it was not necessary to bring in the children through the medium of a guardian or trustee. (*Riggs v. Lehigh Portland Cement Co.*, 76 Ind. App. 308, 131 N. E. 231.)

For a very interesting and instructive discussion of this question, see *Cogdill v. Aetna Life Ins. Co.*, 90 Mont. 244, 2 Pac. (2d) 292. For other cases considering the respective interests and rights of mother and children in these awards, see *Lovasz v. Carnegie Steel Co.*, 266 Pa. 84, 109 Atl. 601; *Holt Bros. Min. Co. v. Fisher*, 255 Ky. 418, 74 S. W. (2d) 469; *Gilliland v. Edgar Zinc Co.*, 112 Kan. 39, 209 Pac. 658; 29 A. L. R. 431; *Johnson v. Newark Glass Co.*, 10 N. J. Misc. 565, 159 Atl. 791; *Gloston v. Industrial Lumber Co.*, (La. App.) 159 So. 618.

It is true, and the Bones case so holds, that where a minor appears through a guardian, such guardian must be appointed by, and subject to the jurisdiction of, a court of this state.

We conclude that the compensation act contemplates the award to the mother for herself and minor children which, in the sound discretion of the board, may all be paid to the widow or be segregated,—part to the mother and part to the children. In case of an award to the mother for herself and children, she may collect it as it falls due and the employer and insurance carrier will be discharged *pro tanto* as each payment is made, but, in case of separate awards, a guardian must be appointed or designated to collect and disburse the minors' share of the award.

The award of the board is affirmed. Costs to respondent.

Holden, C. J., and Morgan, Budge and Givens, JJ., concur.