380 P.2d 1

Kenneth BEUTLER, Employee, Claimant-Respondent,

v.

MacGREGOR TRIANGLE COMPANY, Employer, and Workmen's Compensation Exchange, Surety, Defendants-Appellants.

No. 9110.

Supreme Court of Idaho.

March 22, 1963.

**416**

James E. Schiller, R. H. Young, Nampa, Robert I. Troxell, Kenneth G. Bergquist, Boise, for appellants.

McClenahan & Greenfield, Gideon H. Oppenheimer, Boise, for respondent.

SMITH, Justice.

Respondent is herein sometimes designated as Beutler, and appellant MacGregor Triangle Company as MacGregor. The Industrial Accident Board is herein sometimes referred to as the Board.

This is an appeal from a decision of the Industrial Accident Board in favor of Beutler, to the effect that on August 30,

1960, he received a personal injury caused by an accident arising out of and in the course of his employment by defendant MacGregor, and is entitled to an award against MacGregor and its compensation surety, Workmen's Compensation Exchange, under the Workmen's Compensation Law, the amount of the award to be determined by further proceedings.

Boise-Cascade Corporation had a contract with the United States Forest Service for the cutting of timber on federal lands in the area of Robert E. Lee Creek, a tributary of the North Fork of the Boise River, in Elmore County, Idaho. MacGregor contracted with the Boise-Cascade Corporation to cut such timber and to haul the logs to the Boise-Cascade mill at Emmett, Idaho, where the timber was unloaded by Boise-Cascade employees, and to the Weatherby Lumber mill below Atlanta, Idaho, where the timber was unloaded by Weatherby employees.

August 8, 1960, MacGregor entered into a written agreement with Beutler for the hauling of logs from the Robert E. Lee site to the Emmett mill and to the Weatherby mill. Beutler furnished and operated his own trucking equipment. MacGregor also entered into contracts similar to the Beutler contract, for like hauling and delivery of logs, with some four or five other haulers, who also furnished and operated their own trucking equipment.

The Beutler contract was amended on two occasions; the amendments pertained to the price to be paid for hauling logs and the amount which Beutler would contribute for maintenance of the haul roads.

August 29, 1960, Beutler, while hauling a load of logs from the Robert E. Lee site to the Weatherby mill, struck a washout which caused his truck and trailer to overturn; this caused breakage of air lines in the braking system of his truck. This accident occurred some four or five miles from the logging and loading site. Beutler was not injured in that accident.

Beutler left his truck at the scene of the accident the night of August 29th and "hitchhiked" a ride to his home. The next day, August 30th, using his own automobile, he returned to his trucking equipment. He then arranged with MacGregor's "woods boss" to have the truck and trailer righted. He had previously arranged with a mechanic to repair the brake lines of the truck.

Beutler secured the assistance of a MacGregor tractor to pull his truck and trailer back onto the road. The logs, left at the site of the accident, were later moved by other haulers. After the truck and trailer were back on the road, Beutler then secured the assistance of a MacGregor logging truck to tow his truck to a mechanic at the Weatherby mill. The trailer was unhitched and the MacGregor truck was hooked to Beutler's truck. The two trucks, Beutler

steering his own, and another person driving the MacGregor truck, commenced the trip toward the Weatherby mill. While driving down an incline, the two vehicles became unhooked. Thereupon Beutler's truck "ran away," gathering speed on the down grade road, which at that place was narrow and practically "one way." Since Beutler could not stop the truck he headed it off the road and then jumped from it, thereby sustaining injuries which prompted his filing with the Board a claim for workmen's compensation.

The contract between Beutler and MacGregor recited that Beutler was an independent contractor. It provided that Beutler was to haul logs from the Robert E. Lee site to the Boise-Cascade mill at Emmett, and the Weatherby mill near Atlanta, and that he would be compensated upon an agreed unit price base per thousand board feet of logs delivered at each mill; that Beutler would furnish and control his own equipment and pay the expenses of its operation, including fees, licenses, repairs and fines. In order for Beutler to be paid it was required that he deliver the logs at the respective mills. He could employ others to perform the work if he so desired.

The Board made findings and rulings in effect:

(1) The contract of August 8, 1960, gave MacGregor all control over Beutler, reasonably necessary for MacGregor's needs or purposes. MacGregor's right to terminate Beutler's contract without penalty or liability, upon five days' notice, gave MacGregor the power to control the details of Beutler's work.

(2) Beutler was an employee of MacGregor, not an independent contractor.

(3) Beutler received a personal injury caused by an accident arising out of and in the course of his employment.

(4) Beutler is entitled to an award under the Workmen's Compensation Law, to be determined by the nature and extent of his injuries.

At the outset we reiterate certain fundamental rules frequently applied in deciding workmen's compensation cases.

This Court may determine if the findings of the board do not as a matter of law support the order or award. I.C., § 72–609(d). See also Idaho Const., Art. V., § 9.

■ The evidence, if undisputed, may be reviewed as a matter of law to determine its sufficiency to sustain the findings of the Board If the findings are clearly unsupported as a matter of law, it is within the province of this Court to set them aside and the decision based thereon. Ybaibarriaga v. Farmer, 39 Idaho 361, 228 P. 227; In re Hillhouse's Estate, 46 Idaho 730, 271 P. 459; Benson v. Jarvis, 64 Idaho

107, 127 P.2d 784; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089; Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079.

■ The Board's findings will not be disturbed if there is substantial evidence to sustain them. I.C., § 72–609(a); Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106; Miller v. State, 69 Idaho 122, 203 P.2d 1007; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, 245 P.2d 806; Zimmerman v. Harris Lumber Co., 82 Idaho 187, 350 P.2d 746.

■ Where the facts are in conflict as to the actual relationship existing, it becomes the duty of the trier of facts to determine the ultimate fact whether the relationship is that of employer and employee or principal and independent contractor. Taylor v. Blackwell Lumber Co., 37 Idaho 707, 218 P. 356; Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952; Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657.

Appellants assign error of the Board in finding that MacGregor maintained control over Beutler as to the time of loading logs, species to be loaded and destination of loads, which finding is supportive of the Board's conclusion that Beutler was an employee of MacGregor. Appellants assert insufficiency of the evidence to support such finding. Such assignment requires a review of the evidence as regards the hauling operations, and particularly of indicia pointing to the existence of the employer-employee relationship.

Gordon A. MacGregor, manager of appellant MacGregor Triangle Company, testified, as did Beutler, that the driver of the truck controlled the size of the load, the placing, and the number of logs constituting the load. Beutler was required to pay any fine assessed for violation of any law relating to use of roads, such as for overloading his truck.

There were three alternate routes from the Robert E. Lee site to the Boise-Cascade mill at Emmett. The evidence conflicts as to whether MacGregor designated the hauling route to that mill. Mr. MacGregor testified that he asked the truckers which route they preferred in order that MacGregor would maintain such route, whereas Beutler testified that MacGregor designated it. There was only one feasible route, however, to the Weatherby mill below Atlanta. While MacGregor maintained the routes, Beutler, and the other truckers, contributed charges or expenses toward maintaining the routes.

The record also shows that by the terms of the contract MacGregor retained the right to determine the sequence of the trucks. There is evidence to the effect that MacGregor ordinarily designated the time or times a day each trucker was to load,

the species of logs to be loaded and the destination of each load.

Particularly, the contract did not require Beutler to haul any specified amount of logs. Either party could terminate the relationship upon five days' notice without liability to the other party.

On the other hand, there existed indicia of the principal-independent contractor relationship, viz.: Beutler could hire and pay assistants and if he did, he agreed to carry workmen's compensation coverage. He furnished his own equipment and was responsible for its upkeep and operating expenses, including liability insurance. MacGregor did not withhold income tax or "social security" excise from Beutler's earnings.

This Court in Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657, and Moore v. Idaho Employment Security Agency, 84 Idaho 1, 367 P.2d 291, pointed to various indicia as regards the employer-employee relationship and that of principal-independent contractor. The Court recognized that no one test standing alone, except the right of control in the relationship of employee and employer, and the lack of such right in that of principal and independent contractor, is wholly decisive.

In Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020, the test is aptly stated: "The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee." This general test was approved in Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884. "An independent contractor * * * is one who, in the course of an independent employment, undertakes to perform work subject to the control of the person for whom the work is done only as to the result or product of the work, and not as to the means or methods used." 99 C.J.S. Workmen's Compensation § 90; Merrill v. Duffy Reed Construction Co., supra. "The right of control by which the nature of the employment is tested is the right to control the work, the details of the work, the manner, * * * means or method of doing the work, as contrasted with the result thereof." 99 C.J.S. Workmen's Compensation § 92, pp. 321–323. Taylor v. Blackwell Lumber Co., 37 Idaho 707, 218 P. 356; Goble v. Boise Payette Lumber Co., 38 Idaho 525, 224 P. 439; E. T. Chapin Co. v. Scott, 44 Idaho 566, 260 P. 172; Horst v. Southern Idaho Oil Co., 49 Idaho 58, 286 P. 369; Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952; Fitzen v. Cream Top Dairy, 73 Idaho 210, 249 P.2d 806; Merrill v. Duffy Reed Construction Co., supra.

The retained right of discharge of the worker, or the right of either party to terminate the relationship without liability to the other party, is construed to be a strong,—perhaps the strongest and most cogent,—indication of retention of the power to control and direct the activities of the worker, and thus to control detail as to the manner and method of performance of the work. This Court in effect has so held in certain of its decisions hereinafter discussed.

In Taylor v. Blackwell Lumber Co., 37 Idaho 707, 218 P. 356, the Court in upholding an Industrial Accident Board's finding that Taylor was an employee, and not an independent contractor, of one Finrow, a logging contractor for the lumber company, pointed to certain evidence, viz.: that Taylor was under no obligation to skid the entire quantity of logs, but only as many as he desired; that Finrow exercised a degree of supervision over the work; that Taylor could have quit at any time he desired, and was subject to discharge at any time before the work was finished; that Finrow furnished the appliances for moving the logs and one team of horses, although Taylor furnished one team; that although Taylor was to be paid $2.50 a thousand board feet of logs skidded, he was to be paid at least $10.00 a day. Particularly, this Court pointed out that "the right of discharge is one of the strong indications that the relation was one of employment. An independent contractor must be permitted to finish his contract in the absence of breach on his part." The Court then remarked: "It must not be understood that we consider the evidence conclusive. There was considerable testimony tending to show that Taylor was not a workman but an independent contractor." After ruling that the actual relation between the parties must control and not the conclusion resulting from any single fact, the Court continued: "Whether one is in the employ of another, or is an independent contractor, is to be determined from all the facts and circumstances established by the evidence," and thereupon held that there was substantial evidence to sustain the determination that Taylor was an employee at the time of his injury.

In E. T. Chapin Co. v. Scott, 44 Idaho 566, 260 P. 172, this Court, in upholding a determination that Scott was an independent contractor, pointed to the contract which required the loading of "a definite and determinable amount" of logs and that the Company had no right, at its will and pleasure, to discharge Scott.

In Nixon v. Webber-Riley Lumber Co., 71 Idaho 238, 229 P.2d 997, in upholding the Board's determination that Nixon was an employee and not an independent contractor, this Court pointed to the evidence showing that Nixon "was not engaged to haul any definite amount of lumber; he could be

discharged at any time by the lumber company; he could quit at any time * * *." That Nixon furnished his own truck and employed a helper were but factors, but not controlling, to be considered in arriving at a determination of the relationship. This Court then pointed out that in addition to controlling details of Nixon's work activities, the lumber company retained the right "to discharge him at will."

In Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884, this Court, in upholding a determination of the existence of the relationship of principal-independent contractor, pointed to indicia indicative of such relationship in that, "[t]he contract was for the completion of a full job of painting and absent failure to properly perform, there was no right to terminate the employment."

In Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952, in upholding the Board's finding that Ohm was an independent contractor, this Court pointed to the feature in the case, that the company agreed to pay Ohm a bonus of one cent per sack for hauling potatoes if he continued until the job was completed; that the company could not terminate the contract and deprive claimant of such bonus, and claimant could not quit without suffering a loss of one cent a sack.

See also discussions in Hiebert v. Howell, 59 Idaho 591, 85 P.2d 699, 120 A.L.R. 388; Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; Wilcox v. Swing, 71 Idaho 301, 230 P.2d 995; Blue Bell Co. v. Employment Security Agency, 75 Idaho 279, 270 P.2d 1054; National Trailer Convoy Inc. v. Employment Sec. Div., 83 Idaho 247, 360 P.2d 994.

In Wilcox v. Swing, supra, this Court ruled:

"The issue of whether compensation claimant is [an] employee or independent contractor is determinable not alone from the written contract, but from all the facts and circumstances established by the evidence."

In Fitzen v. Cream Top Dairy, 73 Idaho 210, 249 P.2d 806, is found the following rule of construction:

"When a doubt exists as to whether or not a workman is an employee or an independent contractor under the Workmen's Compensation Act, the Act must be given a liberal construction in favor of the relationship of employer and employee."

All the indicia to which we have referred, particularly that of the right of either party to terminate the relationship without liability to the other party, as well as the evidence to which we have referred indicative of some exercise of control by MacGregor over Beutler of the manner or method of performance of the work, must be considered in the light of the Board's finding that Beutler was MacGregor's em-

ployee. The Board had before it all the various indicia and the facts as developed by the evidence in arriving at its decision.

 We are constrained to the view that the evidence is sufficient to sustain the Board's finding that the employer-employee relationship existed between MacGregor and Beutler at the times mentioned in the Board's decision. Hiebert v. Howell, 59 Idaho 591, 85 P.2d 699.

Appellants' remaining assignment is to the effect that the Board erred in finding that Beutler's injury was incurred "in the course of his employment" in that such finding is not based upon any substantial evidence.

The general rule applicable here is to be found in Murdoch v. Humes & Swanstrom, 51 Idaho 459, 6 P.2d 472, as follows: "An injury arises in the course of the employment when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it." See also Logue v. Independent School District No. 33, 53 Idaho 44, 21 P.2d 534; Colson v. Steele, 73 Idaho 348, 252 P.2d 1049; Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020; White v. Ponozzo, 77 Idaho 276, 291 P.2d 843.

We hold that the evidence is sufficient to sustain the Board's finding that Beutler's injury arose in the course of such employment.

The order and decision of the Industrial Accident Board is affirmed. Costs to respondent, Beutler.

KNUDSON, C. J., and McQUADE, Mc-FADDEN and TAYLOR, JJ., concur.