585 P.2d 965

Dominga LEDESMA,
Claimant-Respondent,

v.

Travis BERGESON, Defendant-Appellant.

No. 12436.

Supreme Court of Idaho.

Oct. 24, 1978.

Robert M. Kerr, Jr., of Kerr, Williams & Clarke, Blackfoot, for defendant-appellant.

Bruce O. Robinson, Nampa, for claimant-respondent.

DONALDSON, Justice.

Claimant-respondent Dominga Ledesma filed her claim with the Industrial Commission seeking workmen's compensation benefits for the death of her husband which allegedly occurred while he was employed by the defendant-appellant Travis Bergeson. Her husband, Anastacio Ledesma, had been a farm laborer for a number of years in the Blackfoot area.

The defendant-appellant, Travis Bergeson, is a farmer in Dayton, Idaho. He contracted with Ledesma and his crew in August of 1974 to harvest his cabbage. Bergeson had employed Ledesma before and knew of his reputation as a good worker. Ledesma's crew consisted of his family and did many types of farm related work in the area.

Bergeson also contracted with Denton and Hal Green to truck the cut cabbage out of the fields after Ledesma's crew had loaded it onto the trucks. On October 28, 1974 a truck owned by one of the Greens became stuck in the cabbage field. Ledesma tried to pull the truck out of the field with a tractor belonging to Bergeson. The tractor turned over, fatally injuring Ledesma.

The Industrial Commission held a hearing to determine if Ledesma was an independent contractor or an employee of Bergeson. The Industrial Commission restricted the scope of the hearing, withholding consideration of the applicability of the agricultural exemption to this controversy until resolution of whether an employer-employee relationship existed between Bergeson and Ledesma at the date of claimant's husband's fatal accident. At that hearing Bergeson was the only witness and testified as follows.

Ledesma selected his own crew to assist him with the harvest of the cabbages. Ledesma controlled the hiring, instructing and paying of his assistants and the details of their work. Bergeson did not pay any of

the crew directly and did not keep any record of the work they had done. Ledesma was paid $3.00 per ton of cabbages cut and loaded. Bergeson believed he had the right to terminate the contract with Ledesma if the results were unsatisfactory and that he would pay Ledesma on the basis of the work completed at that time. Bergeson felt that he had the right to instruct Ledesma as to how the tasks were to be accomplished if the results of the job were unsatisfactory.

The Industrial Commission determined that Ledesma was an employee. The Industrial Commission specifically found that Bergeson had the authority to instruct Ledesma as to how the tasks were to be accomplished and to discharge Ledesma, if necessary. Because of this, the Industrial Commission found that Bergeson had the right to control all activities of Ledesma while he was employed.

Defendant-appellant Bergeson appeals from the order of the Industrial Commission finding that Ledesma was an employee of his at the time of the fatal accident.[1] Although Bergeson assigns some fourteen errors, many dealing with evidentiary issues, the primary issue before this Court is whether the findings made by the Industrial Commission are supported by substantial competent evidence.

### I

This Court's review of workmen's compensation cases appealed from the Industrial Commission is limited to review of questions of law. Idaho Const. art. 5, § 9; *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972). The evidence in the instant case is undisputed and as such the only question of law presented is whether the Industrial Commission made a proper application of law to evidence. *Wachtler v. Calnon*, 90 Idaho 468, 413 P.2d 449 (1966); *Hix v. Potlatch Forests, Inc.*, 88 Idaho 155,

397 P.2d 237 (1964); *Beutler v. MacGregor Triangle Co.*, 85 Idaho 415, 380 P.2d 1 (1963). If the order of the Commission is not supported by substantial evidence, it is within the province of the Supreme Court to set it aside. *Wachtler v. Calnon, supra*; *Beutler v. MacGregor Triangle Co., supra*; *Comish v. J. R. Simplot Fertilizer Co.*, 86 Idaho 79, 383 P.2d 333 (1963).

### II

We do not find substantial competent evidence in the record to support the Industrial Commission's finding that Ledesma was an employee of Bergeson and therefore we reverse.

It appears that the Industrial Commission in concluding Bergeson had the right to control all activities of Ledesma under the agreement to harvest the cabbage relied solely on Bergeson's testimony that he believed he had the right to control and direct the activities of Ledesma.

The general test which establishes the relationship of employer and employee is "the right to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue." *Pinson v. Minidoka Highway District*, 61 Idaho 731, 737, 106 P.2d 1020, 1022 (1940). *See also Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976); *Smith v. Sindt*, 89 Idaho 409, 405 P.2d 959 (1965); *Merrill v. Duffy Reed Construction Co.*, 82 Idaho 410, 353 P.2d 657 (1960).

However as stated in 1B Larsen, Workmen's Compensation § 44.20 (1975):

The rule here is best put negatively: An owner, who wants to get work done without becoming an employer, is entitled to as much control of the details of the work as is necessary to ensure that he

---

1. At the time this appeal was filed I.C. § 72–724 allowed for appeals of "any order of the Industrial Commission." Idaho Code § 72–724 was amended in 1977 to make appeals to the Supreme Court from orders or decisions of the Industrial Commission subject to the Idaho Appellate Rules. I.A.R. 11(d) only permits appeals to the Supreme Court from a final decision or order of the Industrial Commission. Under our present rules an appeal such as the instant one would only be permitted by certification by this Court pursuant to I.A.R. 12.

gets the end result from the contractor that he bargained for. In other words, there may be a control of the quality or description of the work itself, as distinguished from control of the person doing it, without going beyond the independent contractor relations. For example, a lumber company's contract for the cutting of logs required that they be a certain length and that the trees be cut not more than a certain height from the ground. The company's general manager went through the woods about once a week, and if the logs were too short, he would direct that they be cut longer. Such directions were held to be no more than necessary to ensure the agreed end result, and not to make the loggers employees.

■ The integral test then is whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Alexander-Bland Lumber Co. v. Jenkins*, 87 Ga.App. 678, 75 S.E.2d 355 (1953); *Medford Lumber Co. v. Mahner*, 197 Wis. 35, 221 N.W. 390 (1928).

The following testimony clearly shows that Bergeson's primary concern was the results and not the manner and method of executing the job:

Q. BY MR. LEW: On October 28, did you feel you had the right to control and direct the activities of Mr. Ledesma in the performance of his work?

A. These cabbage went to California Packing Corporation. If he would have been cutting them with too much stem or cutting them too deep or something, they would have complained to me. I would have went to Mr. Ledesma's son and explained to him the job wasn't being done right. But that never occurred.

Q. But you feel you did have a right to do this?

A. Yes.

Q. BY MR. KERR: When you have talked about your right of control or what you thought you had as a right of control, were you discussing the right to control the results of the performance or the manner in which and hours and so on in which they performed the work?

A. Well, like I stated earlier, the hours that they spent working was up to them. If they had done an inferior job, I would have talked to them about it. But I never had any control over them when they came or when they left, how long they took for a noon hour; anything to do with time, it was up to them.

Q. The only thing you were concerned about, then, was that the cabbage did arrive at the plant in proper condition?

A. Yes.

The Commission also failed to take into consideration other factors which indicated Ledesma, not Bergeson, controlled the manner and method of the harvest and as such was an independent contractor. Ledesma selected his own crew and determined the number of persons in that crew. Ledesma instructed the crew and determined what days and hours they would work, including the amount of time for a lunch break. Ledesma made arrangements for the compensation of the crew. Bergeson did not pay any of the crew directly and did not keep any record of the work they had done.

The hiring, furnishing, controlling, discharging and paying of assistants although not conclusive of the independent contractor relationship are indicia thereof, and are to be considered. *Merrill v. Duffy Reed Construction Co., supra.*

■ In light of the factors showing Ledesma controlled a substantial portion of the method and manner of the harvest and the testimony which indicates Bergeson only envisioned exercising limited control, if necessary, to ensure satisfactory results, there is no substantial, competent evidence in the record to support the Industrial Commission's finding that Bergeson had the right to control all activities of Ledesma.

■ In addition, the Industrial Commission finding of fact that Bergeson had the right to terminate Ledesma's duties if Ledesma failed to satisfactorily perform those

duties does not in and of itself establish that Ledesma was an employee. In *Beutler v. MacGregor Triangle Co.*, 85 Idaho at 422, 380 P.2d at 4, we stated the following principle:

> The retained right of discharge of the worker, or the right of either party to terminate the relationship without liability to the other party, is construed to be a strong,—perhaps the strongest and most cogent,—indication of retention of the power to control and direct the activities of the worker, and thus to control detail as to the manner and method of performance of the work.

However, this Court in *Beutler* and other cases has been careful to distinguish the unqualified right to fire indicative of an employer-employee relationship from the right of a contracting principal to terminate the contract of an independent contractor for bona fide reasons of dissatisfaction. In *E. T. Chapin Co. v. Scott*, 44 Idaho 566, 260 P. 172 (1927), in holding that Scott was an independent contractor, this Court noted that his contract called for the loading of "a definite and terminable amount" of logs and therefore the company had no right, at its will and pleasure, to discharge Scott.

In *Laub v. Meyer, Inc.*, 70 Idaho 224, 214 P.2d 884 (1950), this Court stated the fact that "[t]he contract was for the completion of a full job of painting and absent failure to properly perform, there was no right to terminate the employment" was indicative of the existence of the relationship of principal-independent contractor. *See also Ohm v. J. R. Simplot Co.*, 70 Idaho 318, 216 P.2d 952 (1950); 1B Larsen, Workmen's Compensation § 44.35 (1978).

Only in cases where either party had the right to terminate the relationship at will and without liability have we held such evidence to be indicative of an employer-employee relationship. *Beutler v. MacGregor Triangle Co., supra*; *Nixon v. Webber-Riley Lumber Co.*, 71 Idaho 238, 229 P.2d 997 (1951); *Taylor v. Blackwell Lumber Co.*, 37 Idaho 707, 218 P. 356 (1923).

The testimony of Bergeson in the instant case was essentially that he felt he had the right to terminate his contract with Ledesma if the cabbage did not arrive at the packing plant in proper condition. Bergeson's testimony does not evince an unqualified right to fire, but rather indicates the right of a principal contractor to terminate a contract of an independent contractor for unsatisfactory work. Bergeson's exercise of such a right is consistent with the status of a contractor principal and the fact that his primary concern was a satisfactory result and not the method by which it was accomplished.

The issue of whether an employer-employee or principal-independent contractor relationship exists is to be determined from all the facts and circumstances established by the evidence. *Merrill v. Duffy Reed Construction Co., supra*; *Taylor v. Blackwell Lumber Co., supra*.[2] The Industrial Commission's finding that Ledesma was an employee of Bergeson at the time of the fatal accident is not supported by the evidence.

The order of the Industrial Commission is reversed.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.

---

2. Although it is not necessary to our decision it should be noted that the Industrial Commission correctly ruled that the "right to control" test is the general test in Idaho for determining the existence of an employer-employee relationship. *Anderson v. Gailey, supra*; *Smith v. Sindt, supra*; *Merrill v. Duffy Reed Construction Co., supra*; *Pinson v. Minidoka Highway District, supra*. However, the right to control the activities of an employee is seldom a demonstrable fact. The right to control the details of the work must often be inferred from other tangible facts. 1B Workmen's Compensation § 44.10 (1978). The principal factors showing right of control are (1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire. Larsen, Workmen's Compensation, *supra*.