910 P.2d 738

**Lynn E. LIVINGSTON, Claimant–Appellant,**

v.

**IRELAND BANK, Employer, and State Insurance Fund, Surety, Defendants–Respondents.**

No. 21083.

Supreme Court of Idaho,
Pocatello, May 1995 Term.

Aug. 31, 1995.

Dennis R. Peterson, Idaho Falls, for appellant.

Steven R. Fuller, Preston, for respondents.

SILAK, Justice.

This is an appeal from an order of the Industrial Commission (Commission) finding that Appellant Lynn E. Livingston (Livingston) is not entitled to worker's compensation benefits from Respondent State Insurance Fund (the Surety) regarding an industrial accident because he was not an employee of Respondent Ireland Bank (the Bank) at the time of the accident. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Livingston was hired by the Bank in January 1990 to conduct inspections, appraisals and repossessions of collateral which secured various loans made by the Bank. The Bank paid Livingston $10.00 per hour for his appraisal and repossession services, plus a mileage allowance of $.25 per mile. Livingston also owned a 42–foot hydraulically-operated equipment trailer that he used on occasion to carry out repossession assignments, at which time he received a greater mileage allowance from the Bank.

Livingston was paid a total of $3,580.00 during 1990, for appraisal and inspection services, which was a small portion of his total annual income. He performed two or three repossessions in 1990 and one in 1991 at the request of the Bank. Generally, the Bank requested Livingston to auction the repossessed items, at which time he deducted his commission and other charges for his services from the amount received from the auction buyer and paid the balance to the Bank. Livingston was paid a total of $460.00 for his services in connection with appraisals and inspections in 1991 through April 14, 1991. From January 1990 through April 14, 1991, the Bank withheld income and unemployment taxes from Livingston's wages for appraisal and inspection services.

On April 14, 1991, Livingston and the Bank entered into a written "Employment Agreement" (the Agreement), because the Bank had identified a need to demonstrate that Livingston rendered his appraisal services at "arms length" from the Bank to satisfy the banking regulatory authorities. The Agreement was to continue until January 1, 1992, and unless terminated pursuant to the notice provisions, would continue from month to month thereafter. Livingston's services were to be nonexclusive, and the Bank acknowledged that he also provided appraisal services for other clients. The Agreement related only to Livingston's services as an appraiser, not his repossession services.

With respect to the Bank's worker's compensation policy, the Surety collected a "deposit premium" from the Bank as security for the premium which would be due for worker's compensation coverage during the calendar year. The deposit premium was an estimate of the premium due at the end of the year and was based upon the actual payroll for the previous calendar year. At the end of the calendar year, the actual total payroll for the calendar year was determined by the Bank and reported to the Surety. The actual premium was calculated, the previously collected deposit premium was credited against the premium due, a new deposit premium for the subsequent calendar year

was charged, and the Bank was billed for the net amount due. This resulted in a deposit premium being remitted to the Surety to secure the premium for the ensuing calendar year.

At the end of 1991, the Bank reported its payroll to the Surety and was assessed a premium of $6,667.72. The reported payroll included amounts paid Livingston for appraisal and inspection services to April 14, 1991, in the amount of $460.00, but did not include amounts paid to him after the Agreement was signed on that date. The deposit premium charged by the Surety at the beginning of 1991, $4,543.00, was credited against the premium due. A deposit premium charge of $6,375.00 was made by the Surety for 1992, and the net premium due, $8,499.72, was billed to the Bank. The Bank then paid that amount to the Surety. The payroll reported to the Surety included no payments to Livingston for repossession services for either 1990 or 1991.

On October 8, 1991, Livingston suffered an industrial accident while he was repossessing a hay baler for the Bank. Because Livingston was hospitalized, the Bank's secretary filed a notice of injury and claim for benefits on his behalf with the Surety.

Livingston received only one check from the Surety in the sum of $154.80, representing total temporary disability benefits to him for the period October 8–14, 1991. In November 1991, Livingston received a denial letter from the Surety, claiming that Livingston was an independent contractor, not an employee of the Bank, at the time and place of the accident.

Livingston then filed a worker's compensation complaint against the Bank and the Surety. After the hearing, the referee issued findings of fact, conclusions of law and proposed order finding that an employer-employee relationship did not exist between the Bank and Livingston at the time of the accident, and that Livingston was, therefore, not entitled to any worker's compensation benefits. The Commission adopted the referee's findings and conclusions and entered an order to that effect. Livingston appeals.

## II.

## ISSUES ON APPEAL

1. Whether Livingston was an employee or an independent contractor at the time he was repossessing the vehicle for the Bank.
2. Whether the Surety is estopped from denying worker's compensation benefits for Livingston, based upon its undisputed receipt and retention of an insurance premium insuring him and computed with respect to his income from the Bank.
3. Whether Livingston is entitled to attorney fees on appeal pursuant I.C. § 12–121 and I.A.R. 41.

## III.

## ANALYSIS

### A. THE COMMISSION PROPERLY CONCLUDED THAT LIVINGSTON WAS AN INDEPENDENT CONTRACTOR AT THE TIME HE WAS INJURED WHILE REPOSSESSING THE VEHICLE FOR THE BANK.

I.C. § 72–102 defines employee and independent contractor as follows:

(10) "Employee" is synonymous with "workman" and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer . . .

(14) "Independent contractor" means any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished.

▬ Coverage under the worker's compensation laws is dependent upon the existence of an employer-employee relationship. *Anderson v. Gailey,* 97 Idaho 813, 820, 555 P.2d 144, 151 (1976). The determination of whether a claimant is an employee or an independent contractor is a factual one. *Mortimer v. Riviera Apartments,* 122 Idaho 839, 844, 840 P.2d 383, 388 (1992); *Olvera v. Del's Auto Body,* 118 Idaho 163, 165, 795 P.2d 862, 864 (1990). This Court will not

overturn factual findings made by the Commission when those findings are supported by substantial and competent, although conflicting, evidence. *Mortimer*, 122 Idaho at 844, 840 P.2d at 388; I.C. § 72–732.

The test in determining whether a worker is an independent contractor or an employee is whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results. *Ledesma v. Bergeson*, 99 Idaho 555, 558, 585 P.2d 965, 968 (1978); I.C. § 72–102(14). This Court has articulated a four-pronged test to determine if the relationship between a master and servant is that of employer-employee or of independent contractors: 1) there must be evidence of the employer's right to control the employee; 2) the method of payment, *i.e.*, whether the employer withholds taxes; 3) whether the master or servant furnishes major items of equipment; and 4) whether either party has the right to terminate the relationship at will, or whether one is liable to the other in the event of a preemptory termination. *Mortimer*, 122 Idaho at 844, 840 P.2d at 388; *Burdick v. Thornton*, 109 Idaho 869, 871, 712 P.2d 570, 572 (1985). The Commission should balance each of the elements present to determine the relative weight and importance of each. *Roman v. Horsley*, 120 Idaho 136, 138, 814 P.2d 36, 38 (1991); *Matter of Hanson*, 114 Idaho 131, 134, 754 P.2d 444, 447 (1988).

When doubt exists as to whether an individual is an employee or an independent contractor under the worker's compensation laws, the Act must be given a liberal construction by the Commission in its fact finding function in favor of finding the relationship of employer and employee. *Mortimer*, 122 Idaho at 845, 840 P.2d at 389; *Olvera*, 118 Idaho at 165, 795 P.2d at 864. However, in worker's compensation cases, the Commission is not required to construe facts liberally in favor of the worker when evidence is conflicting. *Aldrich v. Lamb–Weston, Inc.*, 122 Idaho 361, 363, 834 P.2d 878, 880 (1992). On appeal, while this Court will review the Commission's individual findings with respect to the four factors, the finding to which we

apply the substantial and competent evidence test is the Commission's overall finding, *i.e.*, whether the worker is an employee or an independent contractor.

### 1. *Direct Evidence of Employer's Right to Control.*

Livingston claims that the Bank exercised specific control over him by prohibiting him to perform inspections, appraisals or repossessions for the Bank's competitors. This contention is evidently based upon the testimony of the Bank's president that he did not want Livingston to conduct appraisals for a competing bank, just as he would not allow a teller to work both for the Bank and a competitor. The Commission did not interpret the Bank president's testimony to indicate any prohibition against Livingston performing repossessions for other financial institutions; but rather, the context of the testimony was that the president did not want Livingston to appraise the same piece of equipment for the Bank and for another institution. The Commission found that the testimony had nothing to do with repossessions which is what Livingston was doing when he was injured, and that it was clear that Livingston performed repossessions and related auction services for many different entities. We hold that there is substantial and competent evidence in the record to support the Commission's finding that the Bank had no actual right to control Livingston's activities.

### 2. *Method of Payment.*

The "method of payment" test generally refers to whether income and social security taxes are withheld from a person's wages. Withholding is customary in an employer-employee relationship. *Peterson v. Farmore Pump & Irrigation*, 119 Idaho 969, 972, 812 P.2d 276, 279 (1991). In the present case, the Bank initially withheld taxes from Livingston's pay check for appraisals and inspections, however, this practice changed in April 1991, with the signing of the Agreement. The Commission found this to be significant because it carried out the intent of the parties that Livingston was required to have an "arms length" relationship with the

Bank and be an independent contractor rather than an employee of the Bank in connection with his appraisals, inspections, repossessions and auction sales. The Commission found, however, the method of payment factor in this case to be neutral and that it did not militate in favor of either an employee or independent contractor status because taxes were not withheld from Livingston's earnings for repossessions as he deducted his hourly charges and expenses from the auction proceeds. We disagree and hold that the method of payment in this case should actually have been deemed by the Commission a factor in favor of independent contractor status.

After April 14, 1991, the Bank did not withhold any taxes from the checks given Livingston for appraisals and inspections. More importantly, though, is the fact that the Bank never withheld taxes from Livingston for any of his repossessions (of which there were only 4), for either 1990 or 1991 because the Bank did not issue him a paycheck in the traditional sense. Rather, Livingston would sell the repossessed equipment through his auction company, deduct his commission ($10.00 per hour plus $.25 per mile), and pay the balance to the Bank. This is the procedure that was to be followed for the repossession conducted by Livingston in October 1991 when he was injured. This method of payment is consistent with independent contractor status. Further, in an employer/employee relationship, there would be no sharing of profits from the business of the employee. In this case, the profits from the auction business of Livingston were divided among the partners of Livingston Auction Company and Sales.

### 3. Furnishing Major Items of Equipment.

The Commission found that Livingston furnished the major items of equipment used in connection with repossessions and auction sales of repossessed property. Livingston furnished the truck and trailer used to pick up and haul equipment to storage and to sale. The Bank had no such equipment available and furnished none to Livingston. The Commission further found that although the Bank reimbursed Livingston for certain mileage expenses incurred in repossessing equipment, these amounts were not shown to be substantial, but the value of equipment furnished by Livingston was significant. Thus, the Commission concluded that this test indicated the existence of an independent contractor relationship. We agree and hold that there is substantial and competent evidence to support the Commission's findings.

### 4. Right to Terminate Employment Relationship at Will.

The Commission found that this factor did not weigh in favor of either party in this case. We agree. The Agreement provides that the relationship between Livingston and the Bank could be terminated by either party upon appropriate notice. This Court has indicated previously that such agreements are of little assistance in determining the relationship between the parties. See J.R. Simplot Co. v. State Dep't. of Employment, 110 Idaho 762, 765, 718 P.2d 1200, 1203 (1986). We agree with the Commission that this is particularly true where the services rendered are a succession of individual tasks separately assigned when the need arises on an occasional basis. Further, it is not clear whether the parties would be required to provide appropriate notice of termination pursuant to the Agreement with respect to repossessions since this aspect of Livingston's work for the Bank was not covered by the Agreement.

Thus, we hold that there is substantial and competent evidence to support the Commission's overall finding and conclusion that Livingston was an independent contractor with respect to his relationship with the Bank.

### B. THE SURETY IS NOT ESTOPPED FROM DENYING WORKER'S COMPENSATION BENEFITS FOR LIVINGSTON.

Livingston argues that the Surety is estopped from denying him worker's compensation benefits based upon its alleged receipt and retention of a premium insuring him, and which was allegedly computed with respect to his income from the Bank. We hold in favor of the Surety for three reasons.

First, Livingston argues that the Surety is estopped from denying him benefits pursuant to I.C. § 72–229(1), which provides in pertinent part:

> Notwithstanding the provisions of section 72–204 and 72–205, Idaho Code, a surety which issues to an employer a policy of workers' compensation insurance and collects a premium based upon moneys paid or to be paid a worker ... shall not be permitted to plead and raise the defense that the worker, at the time of the occurrence of the industrial accident ... was an independent contractor and not an employee of the surety's insured employer....

We agree with the Surety that this statute has little or no meaning to this case since it was not enacted until 1992 and the injury giving rise to this claim took place on October 8, 1991. Since all of the events and rights of Livingston became fixed on the date of his injury, or at least no later than the date upon which the Surety issued a denial letter, November 14, 1991, the statute would have to be retroactively applied in order to have an affect in this case. This we decline to do. *See Frisbie v. Sunshine Mining Co.,* 93 Idaho 169, 172, 457 P.2d 408, 411 (1969) (Application of law in effect at time disability occurred to claim arising from such disability does not involve retroactive application of the law.)

Second, we hold the Surety is not estopped from denying Livingston worker's compensation benefits because even though a premium was paid by the Bank to the Surety for coverage which included Livingston through April 14, 1991, such coverage was not in effect on October 8, 1991, the date of his accident. Livingston was hired by the Bank in January 1990. At the end of 1990, a premium was paid by the Bank for worker's compensation coverage which included Livingston for the year 1990. This premium was determined after the Bank had submitted its actual payroll for the year 1990. The Surety, in conjunction with the Bank, then computed a "premium deposit" for the year 1991. The premium deposit acted as an estimate or security deposit for the year 1991, but the actual premium for 1991 was not earned until the payroll figures for 1991 were given to the Surety at the close of the year.

After the April 14, 1991 Agreement was executed, the Bank discontinued withholding income tax from Livingston's checks and at the end of the year, the Bank reported wages for determination of the premium due the Surety from January 1, 1994 through April 14, 1991. The change was a reflection of the Agreement (in which it was specifically represented and understood by the parties that from that day forward Livingston was an independent contractor), and therefore no premium was collected for Livingston by the Surety which included the period of time when the accident occurred, October 8, 1991.

Third, the Commission found that it was not proven that any charges made by Livingston to the Bank in connection with his services in repossessing and auctioning equipment were included within the payroll reported by the Bank to the Surety for either 1990 or 1991. If the Bank did not include the amounts paid to Livingston for his repossession services within the payroll reported to the Surety, then the Surety would not have calculated a premium deposit based upon Livingston's repossession services and the Bank would not have paid a premium based upon those services. Thus, Livingston's argument that he is entitled to worker's compensation benefits because the Surety received and retained a premium insuring him, must fail.

## IV.

## CONCLUSION

We hold that there is substantial and competent evidence to support the Commission's finding and conclusion that Livingston was an independent contractor at the time he was injured while repossessing a hay baler for the Bank.

We further hold that the Surety is not estopped from denying Livingston worker's compensation benefits because I.C. § 72–229(1) was not in effect at the time of Livingston's injury; an insurance premium was not paid by the Bank to the Surety for Livingston after April 14, 1991; and the evidence did not establish that Livingston's charges to

the Bank for his repossession and auction services were ever included within the payroll submitted to the Surety for calculation of the premium deposit.

Accordingly, the order of the Commission is affirmed. Costs to respondents. No attorney's fees on appeal.

Chief Justice McDEVITT, Justices JOHNSON, TROUT and SCHROEDER, concur.